603 So.2d 284 (1992)
James "Sonny" FOSTER, Jr.
v.
TRAFALGAR HOUSE OIL & GAS, et al.
No. 24696-CW.
Court of Appeal of Louisiana, Second Circuit.
September 11, 1992.
*285 Cook, Yancey, King & Galloway, Shreveport by Herschel E. Richard, Samuel W. Caverlee, Timothy B. Burnham, S. Price Barker, for Hollingsworth Const. and Aetna Cas. & Sur. Co.
Barham, Adkins & Tatum, Ruston by Tommy J. Adkins, for James "Sonny" Foster, Jr.
Davenport, Files & Kelly, Monroe by Ramsey Lee Ogg.
Before HIGHTOWER, VICTORY and STEWART, JJ.
Applicants, Hollingsworth Construction Co., Inc., and Aetna Casualty & Surety Co., filed a writ application requesting this Court to issue an order prohibiting the introduction of any testimony or exhibits quantifying or giving a specific monetary value for hedonic damages allegedly resulting from an accident in which James "Sonny" Foster, Jr. was injured. Foster and defendant, Trafalgar House Oil & Gas, Inc., filed a response received this date.
Applicants filed a motion in limine in the trial court moving that court to exclude the testimony of Dr. Luvonia J. Casperson, any exhibits regarding hedonic damages, and any theory quantifying or giving a specific monetary value for such alleged damages. After the motion came on for argument and the court initially took the matter under advisement, the court stated in open court on September 2, 1992, that hedonic damages were a valid portion of general damages, that such damages must be proved, and that there must be a means by which to prove such damages. The court found that the means of proof could take the form of lay and expert testimony. Accordingly, the court found that if a witness qualified as an expert on hedonic damages, then there was no reason for that expert not to be able to give an opinion. Thus, the trial court essentially ruled that the question of whether evidence of hedonic damages could be introduced pursuant to the testimony of Dr. Casperson would depend upon whether she qualified as an expert in that particular area, and that the question of qualification would have to be decided at the time the witness was offered. This ruling may be viewed as effectively denying applicants' motion in limine, or as deferring the motion until the witness is offered. Because it is virtually certain the witness will be offered, and because the issue of allowing expert testimony quantifying hedonic damages is one of some importance, we reverse the trial court's ruling which allows a party to attempt to qualify an expert in the area of hedonic damages.
The term "hedonic damages" refers to damages for loss of the enjoyment of life or lifestyle. While this term is new to our jurisprudence, the concept is not. Under our jurisprudence, the term "general damages" refers to those damages which may not be fixed with any degree of pecuniary exactitude, but which involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boswell v. Roy O. Martin Lumber Company, 363 So.2d 506 (La.1978); Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir. 1990). Thus, hedonic damages are included in "general damages." Accordingly, the question presented is whether a party should be allowed to qualify an individual as an expert with respect to any type of general damages so as to allow that individual to offer an opinion to the trier of fact on the amount of such general damages to be awarded. For the reasons which follow, we hold that no such area of expertise should be recognized by our courts, and no such opinions or other evidence quantifying general damages should be allowed.
As long ago as 1856, the Louisiana Supreme Court ruled that it is for the jury, and not for a witness, to assess the amount *286 of damages for pain and suffering, and that the testimony of a witness as to his opinion of the amount of such damage is not admissible. Wilcox v. Leake, 11 La. Ann. 178. In Wilcox a doctor was alleged to have injured a patient during treatment. A witness attempted to testify as to the patient's personal injury damages, including pain and suffering and disfigurement, and suggest an amount for such damages. In upholding the trial court's exclusion of this testimony, the Supreme Court stated:
It is the peculiar province of a jury to make the assessment of damages in such cases, in which much discretion is vested in them.... Were it otherwise, the witnesses, and not the jury, would be the judges to determine the matter.
Intellectual and emotional losses, unlike financial losses, do not lend themselves to mathematical computation and analysis. Medical costs and lost wages are measured in dollars and cents; enjoyment and suffering are not. Although we require judges and juries to made monetary awards for general damages, we do so because justice requires some measure of compensation be given. However, such compensation is never a true measure or a true compensation for what is lost. The task of awarding general damages is a uniquely human endeavor, not only calling upon the trier of fact to consider the host of factors unique to each individual case, but also requiring the trier of fact to draw upon the virtually unlimited factors unique to us as human beings. Thus, general damage awards, both by definition and by nature, may not "be fixed with any degree of pecuniary exactitude". Boswell, supra.
For these reasons, economic theories which attempt to extrapolate the "value" of human life from various studies of wages, costs, etc., have no place in the calculation of general damages. Similarly, most courts hold that it is improper for counsel in civil cases to make arguments to juries based upon the amount of verdicts in similar cases. 15 ALR 3rd 1144. See also Hoffman v. All Star Insurance Corp., 288 So.2d 388 (La.App. 4th Cir.1974); and Reese v. Winn Dixie of Louisiana, Inc., 542 So.2d 68 (La.App. 3d Cir.1989). If arguments are improper which imply that some measure of precision is possible in making general damage awards, then, a fortiori, the introduction of expert testimony making similar implications is improper. Such testimony would imply certainty in an area where none exists and, as held in Wilcox, supra, would improperly invade the province of the jury. To the extent such testimony or similar evidence might have some marginal relevancy, any probative value would be substantially outweighed by the countervailing considerations. See LSA-C.E. Arts. 403 and 702.
For the foregoing reasons, we hold that the trial court erred in not granting applicants' motion in limine, and we hereby order that no attempt to qualify an expert or present evidence quantifying general damages, including "hedonic damages," be allowed. Of course, our ruling does not prevent Dr. Casperson, an economist, from testifying to other matters within her area of expertise which do not improperly invade the province of the jury.