823 So.2d 1039 (2002)
Amy Kelly DAY, et al, Plaintiff-Appellee
v.
OUACHITA PARISH SCHOOL BOARD, et al, Defendant-Appellant.
No. 35,831-CA.
Court of Appeal of Louisiana, Second Circuit.
August 8, 2002.
*1040 Elmer G. Noah, II, Monroe, for Appellant.
Donald R. Brown, Robert A. Breithaupt, Monroe, for Appellee.
Before WILLIAMS, KOSTELKA and DREW, JJ.
WILLIAMS, Judge.
The defendants, Ouachita Parish School Board and John Green, appeal a judgment in favor of the plaintiffs, Amy Day and her son, Morgan Day. The trial court found that defendants were liable for a back injury sustained by Morgan Day and awarded damages for his injuries. For the following reasons, we affirm and remand.

FACTS
In August 1997, Morgan Day ("Morgan") was a freshman at West Monroe High School ("WMHS"). As a member of the freshman football team, Morgan was required to participate in a weight training *1041 class held during school hours. The weight lifting program was directed by the school's strength coach, John Sanders, who was assisted by coach John Green ("Green") and two other coaches. The sixty student players were divided into four or five lifting groups, each of which was supervised by one of the coaches. Several senior students on the team assisted the coaches with supervising and instructing the class participants.
In October 1997, Morgan injured his back while lifting weights in class. The next day, Morgan played in a freshman football game even though his back was bothering him. On October 7, 1997, Morgan sought treatment from Dr. Douglas Brown, an orthopedic surgeon. After an examination, Dr. Brown diagnosed Morgan's injury as lumbar strain and a dehydrated L-5 disc. Dr. Brown provided Morgan with a written medical excuse, which stated "(1) No football for 1 week (2) No weightlifting, squats or power cleans. Diagnosis-lumbar strain and injured L-5 disc."
Morgan presented the medical excuse to George Bell, the freshman coach, and the note was posted on a bulletin board in Coach Sanders' office. Coaches Bell, Green and Sanders testified that they interpreted the doctor's note to mean that Morgan could not participate in football or weightlifting for a period of one week. Morgan and his mother, Amy Day, testified that they interpreted the note to mean that he could not play football for one week and could not lift weights for an indefinite time period.
According to Morgan, who did not recall the exact date, at some point after the medical excuse was posted he was observing in class but not lifting weights, when Green instructed him to perform a "dumbbell power clean push press." When Morgan reminded Green that he was medically excused, the coach insisted that the lift was an upper body exercise and would not affect his lower back. After performing several repetitions of the lift, Morgan felt severe pain in his back and needed to lie down on a mat.
On October 21, 1997, Morgan again saw Dr. Brown with a complaint of back pain. Dr. Brown ordered an MRI of the lumbar spine that indicated a disc protrusion between the fourth and fifth vertebrae. Dr. Brown diagnosed Morgan with a herniated disc at the L-4 level and issued another medical excuse that prohibited him from all weightlifting and football activities until further notice. Morgan was referred to Dr. Ronald Ellis, an anesthesiologist specializing in pain management. Dr. Ellis recommended a series of epidural steroid injections, which were declined by Morgan and his mother. Morgan went to see two other orthopedic surgeons, Doctors David Trettin and Don Burt, and a neurosurgeon, Dr. Jose Bermudez.
Morgan next visited Dr. Brown in August 2000. Dr. Brown found that Morgan continued to experience lower back tenderness with a mild muscle spasm. Another MRI reflected, as in the previous study, a central disc protrusion at the L-4 level.
After the disc injury, Morgan was unable to play high school football or baseball. Morgan lost interest in school and failed his courses due to excessive absences. He withdrew from WMHS and enrolled in Richardson High School, an alternative school, where his grades improved.
Morgan's injury caused his mother to incur medical expenses of $7,485. Dr. Brown estimated that surgery to relieve the herniated disc would cost $16,000. As of the trial date, Morgan had not pursued the recommended series of epidural steroid *1042 injections or participated in physical therapy for his back.
The plaintiff, Amy Day, individually and as tutrix of her minor son Morgan, filed a petition for damages against the defendants, Ouachita Parish School Board and John Green. Morgan was later added as a party plaintiff upon reaching the age of majority. After a trial, the court issued written reasons for judgment, finding that the defendants were liable for Morgan's back injury and awarding the plaintiffs damages of $7,485.45 for past medical expenses, $195,500 for pain and suffering, $30,000 for future medical expenses and $50,000 for loss of enjoyment of life. Judgment was rendered in favor of the plaintiffs. Defendants appeal the damage award.[1]

DISCUSSION
In two assignments of error, the defendants contend the trial court erred in awarding general damages of $195,500 for Morgan Day's pain and suffering and an additional $50,000 for loss of enjoyment of life. The defendants argue that the award for pain and suffering is excessive.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment or other losses of lifestyle that cannot be definitively measured in monetary terms. Robbins v. State Dept. of Labor, 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991. Before an appellate court may disturb such an award, the record must clearly show that the factfinder abused its broad discretion in making the award. Robbins, supra. The finding of an abuse of much discretion must be based on the particular injuries sustained and their effect on the particular injured person. After a determination that an award constitutes such an abuse of discretion, the appellate court may reduce or increase the award to the highest or lowest amount reasonably within the factfinder's discretion. Dauzat v. Rapides Parish Police Jury, 95-115 (La.App. 3rd Cir.6/7/95), 657 So.2d 484.
In the present case, Dr. Brown first saw Morgan on October 7, 1997, with a complaint of severe pain in the left lower back. During the physical exam, Dr. Brown noted that Morgan was only able to bend approximately 45 degrees at the waist. Dr. Brown did not find any evidence of nerve injury, but reported that Morgan's low back muscles were very tight, with spasms. Morgan was diagnosed with an acute lumbar strain.
Morgan returned to Dr. Brown on October 21, 1997, with severe back pain radiating down to the right leg. The straight leg raising maneuver was positive, indicating a possible ruptured disc. The MRI results were consistent with a herniated disc at the L-4 level. Dr. Brown referred Morgan to Dr. Ellis for epidural steroid injections to reduce the pain. In his deposition, Dr. Brown testified that the patient and his mother decided against the injections to see if the condition would resolve itself.
In November 1997, Morgan saw Dr. Don Burt, an orthopedic surgeon, with a complaint of pain in the lower back, right hip and right leg. Dr. Burt examined Morgan and noted muscle tightness in the back and a positive sciatic stretch test on the right side, made worse by flexion of the neck. Dr. Burt recommended continued conservative treatment.
In March 1998, Morgan visited Dr. David Trettin complaining of back and leg *1043 pain. Dr. Trettin noted a positive leg raise that caused pain in Morgan's right thigh and calf. In his progress notes, Dr. Trettin expressed concern that almost six months after the injury, Morgan was still having pain with the positive straight leg raise. Dr. Trettin recommended disc excision.
Dr. Trettin referred Morgan to Dr. Bermudez, a neurosurgeon, who saw Morgan in April 1998. Morgan complained of continuing sporadic pain in his back, right hip and right thigh that sometimes increased with coughing or sneezing. Dr. Bermudez ordered x-rays, a bone scan and an MRI of the lumbar spine. In August 1998, Dr. Bermudez reported that the MRI did not show any remarkable changes from the MRI of October 1997 and that the bone scan was normal. Dr. Bermudez recommended that Morgan lose weight, continue swimming and return in six months for a follow-up visit.
Morgan did not seek any further medical treatment for his injury until he again saw Dr. Brown in August 2000 with a complaint of continued lower back pain. Dr. Brown noted that Morgan continued to have a muscle spasm in his back and he ordered another MRI, which showed the disc protrusion at the L-4 level unchanged from the previous study. Dr. Brown opined that more probably than not, Morgan would need lumbar surgery in the future to remove the disc considering that he is young, that his body size places stress on his back and that the herniated disc had not improved during the time between his visits.
Morgan testified that at the time of trial, he continued to experience recurring low back pain, but had not received the epidural steroid injections or undergone surgery. Morgan acknowledged that he was able to play summer league baseball in 2000 as a first baseman, pitcher and catcher, but said that he was twice required to stop playing due to back pain. Morgan testified that he also worked as an umpire for a youth summer league. Morgan also testified that he returned to Dr. Brown in August 2000 after his back stiffened while sitting at school.
April Picard, a teacher at Richardson, testified that on one occasion she observed Morgan when he experienced pain at school and needed to lie down on the floor during class for relief. Robin Austin, Amy Day's sister and Morgan's aunt, testified that in 1997, she traveled to the state championship football game in New Orleans with Morgan and other family members. Austin stated that after eating at a restaurant, Morgan was physically unable to walk back to the hotel because of severe back pain.
Amy Day testified that Morgan often did not sleep a full night in his bed because of back pain, which caused him to move to the floor or a couch. She stated that driving or sitting for an extended period of time increased Morgan's lower back pain.
The testimony presented at trial demonstrated that while lifting weights in a football training program at WMHS, Morgan sustained a herniated disc which caused him severe pain for approximately six months. During his visit to Dr. Bermudez in April 1998, Morgan complained of continuing sporadic back pain, but said his condition had improved slightly. Morgan testified that at the time of trial, he continued to experience recurring back pain as the result of his injury. Morgan's testimony was corroborated by other witnesses who had observed his reactions to the pain and the resulting physical limitations. In August 2000, almost three years after the injury, Dr. Brown reported that Morgan continued to experience muscle spasms in his lower back and that the disc protrusion had not improved.
*1044 The trial court heard the testimony, weighed the credibility of the witnesses and considered the medical reports. The evidence in the record supports the trial court's findings that Morgan Day's injury caused him severe pain and that he continues to experience recurring pain that will limit this young adult's daily activities for the indefinite future. Considering the particular effects of this specific injury on this plaintiff, we cannot say the trial court abused its broad discretion in awarding Morgan Day $195,500 for pain and suffering. The assignment of error lacks merit.
The defendants argue that the record does not support a separate award of $50,000 for loss of enjoyment of life, or alternatively, that the amount is excessive and must be reduced. Loss of enjoyment of life is a compensable element of general damages, which refers to those damages that may not be fixed with any degree of pecuniary exactitude. Foster v. Trafalgar House Oil & Gas, 603 So.2d 284 (La.App. 2d Cir.1992); Stevenson v. La. Patient's Compensation Fund, 97-709 (La.App. 5th Cir.4/9/98), 710 So.2d 1178. A plaintiff is entitled to recover damages for loss of enjoyment of life if he proves that his lifestyle was detrimentally altered or if he was forced to give up activities because of his injury. Horton v. McCrary, 620 So.2d 918 (La.App. 3rd Cir.1993), aff'd in part and rev'd on other grounds, 93-2315 (La.4/11/94), 635 So.2d 199.
In the present case, the testimony presented shows that as a result of his injury, Morgan lost a probable opportunity to participate in varsity football and baseball at WMHS, a goal for which he had trained and practiced since the sixth grade. The evidence also demonstrates that the loss of this opportunity caused Morgan emotional anguish. Dr. Ellis noted that the results of a psychological test indicated that Morgan was experiencing mild depression. Amy Day testified that her son became "really depressed" after he was advised that he would be unable to play sports at the varsity level. Morgan stated that because his life was so centered on participating in school athletics, after learning that he could not participate in sports, he lost interest in his academic work, missed school and failed his classes. As the trial court noted, the opportunity to participate in high school athletics was a very significant part of Morgan's life and he cannot regain that lost opportunity.
The testimony also established that more probably than not, Morgan's injury will force him to give up the chance to participate in certain activities, including military service and any strenuous occupations. We note that Morgan has not sought psychological therapy or counseling and that despite his episodes of pain, Morgan has been able to play summer league baseball, serve as an umpire in youth games and work in a sporting goods store.
Based upon this record, we agree that loss of enjoyment of life is a compensable element of damages in this case. Further, we cannot say that the award of $50,000 for loss of enjoyment of life is excessive in light of the particular circumstances of this plaintiffs situation. Although the awards for pain and suffering and loss of enjoyment of life are on the high end of the spectrum, they do not exceed the highest amount reasonably within the trial court's broad discretion in assessing damages.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. To the extent allowed by law, costs of this appeal in the amount of $141.50 are assessed to the appellants, Ouachita Parish School Board and John Green. This matter is remanded to the district court for the calculation of *1045 trial court costs, pursuant to LSA-R.S. 13:5112.
AFFIRMED AND REMANDED.
KOSTELKA, J., dissents with written reasons.
KOSTELKA, J., dissenting.
I must respectfully dissent on the additional award for loss of enjoyment of life, as affirmed by the majority. Under the facts of this case, and in the specific holding of the trial court in its lengthy written reasons for judgment, any award for loss of enjoyment of life, sometimes referred to as "hedonic damages," was necessarily subsumed in the very generous general damage award. In assessing the general damage award, the trial court specifically referred to the plaintiffs injuries as having changed his life dramatically and that his injuries would significantly impact the plaintiff for the rest of his life. The jurisprudence has long defined "general damages" as those which may not be fixed with any degree of pecuniary exactitude, but which involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978); Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1135 (La.1991); Foster v. Trafalgar House Oil & Gas, 603 So.2d 284 (La.App. 2d Cir. 1992). This court specifically stated in Foster, "Thus, hedonic damages are included in `general damages.'" Justice Jeffrey P. Victory, in his assigned reasons in Joseph v. Broussard Rice Mill, Inc., XXXX-XXXX (La.10/30/00), 772 So.2d 94, 107, stated that "[the Louisiana Supreme] Court has never squarely addressed the issue of awarding hedonic damages for loss of enjoyment of life as a separate element of damages...." The injury to plaintiff here is not so severe as to merit a separate award for so-called loss of enjoyment of life, particularly when that very aspect was included in the award for general damages.
NOTES
[1] On appeal, the defendants have not challenged the trial court's finding of liability. Therefore, that portion of the judgment is final.