830 So.2d 1125 (2002)
Henry T. POULAN, Jr., Plaintiff-Appellee,
v.
Linda G. HUNTER and Allstate Insurance Company, Defendant-Appellee.
No. 36225-CA.
Court of Appeal of Louisiana, Second Circuit.
November 6, 2002.
Rehearing Denied December 5, 2002.
*1126 Walter C. Dunn, Jr., Monroe, for Appellant, Linda G. Hunter.
Mark J. Neal, Monroe, for Appellant, Allstate Insurance Company.
Anthony J. Bruscato, Monroe, for Appellee.
Before BROWN, WILLIAMS and DREW, JJ.
WILLIAMS, Judge.
The defendants, Allstate Insurance Company ("Allstate") and Linda Hunter, appeal a judgment in favor of the plaintiff, Henry Poulan. The trial court found that Linda Hunter's vehicle negligently struck the plaintiff and caused his left knee injury. The court awarded general damages of $32,000 for plaintiff's left leg injuries against the defendants. For the following reasons, we affirm.

*1127 FACTS
On January 22, 1997, Linda Hunter ("Hunter") stopped her vehicle approximately one car length from the teller window in a drive-through lane at Ouachita Valley Credit Union in Monroe, Louisiana. Henry Poulan stopped his truck behind Hunter. After waiting several minutes and sounding his horn without any movement by Hunter, Poulan left his truck and walked past her vehicle to the teller window. Hunter then drove her vehicle quickly toward the window. Poulan noticed the automobile approaching and attempted to jump out of the way. According to Poulan, the bumper of Hunter's vehicle struck his inside right leg and the side mirror hit his left leg.
In attempting to be served first, both Poulan and Hunter placed their banking documents in the teller drawer. In the process, Hunter's deposit slip and checks were knocked out of the drawer and scattered on the ground. Hunter then exited her vehicle, shoved Poulan and slapped him several times in the head above his right ear. Bank employees intervened to stop the altercation. A witness stated that Poulan appeared to be limping after being bumped by the vehicle. Poulan stated that he felt considerable pain after the incident.
The following day, Poulan visited the Orthopedic Clinic and reported left leg pain after being struck by a vehicle. The physician on duty, Dr. Bulloch, noted a bruised discolored area and swelling of Poulan's left thigh. In July 1997, Poulan returned to the clinic and saw Dr. Sidney Bailey, an orthopedic surgeon, who recommended conservative treatment. Dr. Bailey next saw Poulan with continuing symptoms in October 1997 and ordered an MRI of the left knee. The MRI indicated a torn medial meniscus and torn anterior cruciate ligament ("ACL") of the left knee.
Subsequently, the plaintiff, Henry Poulan, filed a petition for damages against the defendants, Linda Hunter and her insurer, Allstate Insurance Company. Allstate denied coverage under its policy on the grounds that Hunter had acted intentionally in injuring plaintiff.
After a trial, the court found that Hunter had acted intentionally in slapping plaintiff in the head, precluding coverage for the resulting injury under the terms of Allstate's insurance policy. The court further found that Hunter's vehicle struck the plaintiff, causing injury to his left knee, and that the policy provided coverage for these damages because Hunter's act of bumping plaintiff with the automobile was negligent. The court rendered judgment against Allstate and Hunter awarding plaintiff $32,000 in general damages and $2,059 in medical expenses for his left leg injuries. The court also awarded against Hunter alone $2,500 in general damages and $310 in medical costs for plaintiff's head injuries. Allstate appeals the judgment. Poulan filed an answer to the appeal, contending the general damage award for his left knee injury should be increased to $75,000.

DISCUSSION
Allstate contends the trial court erred in finding that Hunter did not intentionally strike plaintiff with her vehicle. Allstate argues that under Hunter's policy, coverage is excluded because she acted with an awareness that injury was reasonably likely to result from her behavior.
The insurer bears the burden of proving the applicability of the intentional act exclusion clause. Yount v. Maisano, 627 So.2d 148 (La.1993). The factfinder must look to all of the surrounding circumstances to determine a person's intent at the time of the act in question. Hooper v. *1128 State Farm Mutual Ins. Co., 00-1509 (La. App. 5th Cir.1/23/01), 782 So.2d 1029. A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder's resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
In the present case, the bank teller, Felicia Blunt, testified that before the accident, she observed Hunter's vehicle sitting back from the teller window. Blunt stated that Hunter's vehicle had been in the same position for at least five minutes when she saw plaintiff walk up and stand in front of her window. Blunt testified that while plaintiff was placing his documents in the teller drawer, she noticed Hunter drive toward the window "sort of quick" and plaintiff jumped on to the curb to avoid getting "run over." Hunter placed her papers into the drawer but they were pushed out by plaintiff's hand. Blunt stated that when Hunter stepped from her vehicle and pushed the plaintiff, she turned away from the window to call her supervisor and did not see Hunter slap the plaintiff.
Another witness, Sharon Anderson Jones, testified that she waited behind Hunter's automobile for several minutes and then drove into the second lane. Jones stated that a truck stopped behind Hunter and after several minutes sounded the horn. Jones next saw the driver of the truck get out and walk over to the teller's window. Jones testified that as plaintiff reached the teller drawer, Hunter's vehicle suddenly accelerated toward him and he tried to get out of the way, but he was hit by the vehicle's bumper. Jones stated that Hunter was cussing and screaming that she had been there first. Jones testified that Hunter stepped from her vehicle, shoved plaintiff against the wall and then hit the side of his head with her fist. Jones did not think that Hunter intended to hit plaintiff with her automobile, but that she had pressed her accelerator too hard when starting forward.
Mamie Williams testified that she was close behind Hunter and plaintiff when they arrived at the bank drive-through at approximately the same time. Williams stated that Hunter stopped a short distance away from the teller window and that 30 seconds later, plaintiff walked to the window. Williams testified that as plaintiff reached the front of Hunter's vehicle, she started to move forward, but not at a rapid pace. Williams stated that as plaintiff reached the window, Hunter extended her arm to place her items in the drawer and plaintiff hit her hand, knocking the papers to the ground. Hunter then stepped out of the automobile and pushed plaintiff with both hands. Williams did not see Hunter slap the plaintiff.
The plaintiff testified that after waiting behind Hunter approximately 8-10 minutes, he left his truck and walked around her vehicle to the teller window. Plaintiff stated that as he placed his deposit into the teller drawer, he looked to his left and saw the vehicle approaching. He testified that he stepped with his left leg onto a curb, but the vehicle's bumper hit the inside of his right leg and the driver's side mirror hit his left leg between the hip and knee. Plaintiff stated that after Hunter's items were blown from the drawer, she opened her door into him, stepped from her vehicle and slapped his head several times above his right ear.
Linda Hunter testified that she drove directly to the first teller window after entering the premises, she did not stop a *1129 short distance away, and that she was sitting at the window for only 30 seconds to one minute to endorse three checks. Hunter stated that as she placed her items into the drawer, the plaintiff appeared and put his papers into the drawer, knocking her hand away and causing her checks to drop on the ground. Hunter acknowledged that she then stepped out of the vehicle and physically pushed plaintiff to the side when he did not move. However, Hunter denied hitting the plaintiff with her vehicle or slapping the side of his head. Hunter testified that she did not intend to injure plaintiff in any way.
After hearing the conflicting testimony, the trial court found that the preponderance of evidence showed that Hunter's vehicle struck the plaintiff, but that she acted negligently and did not intend to hit plaintiff with her automobile. Jones and Poulan testified that Hunter approached the teller window yelling that she had been there first and should be the first one helped. None of the five witnesses to the incident suggested that Hunter had deliberately driven her vehicle into the plaintiff. Thus, the testimony supports a finding that the focus of Hunter's conduct in driving forward was to be first in line at the teller window and not to hit plaintiff with her vehicle. After reviewing the record, we cannot say the trial court was clearly wrong in finding that the contact between Hunter's vehicle and the plaintiff was unintentional and that the resulting damages were covered by the insurance policy. The assignment of error lacks merit.
Causation
The defendants contend the trial court erred in finding that plaintiff's left knee injury was caused by the impact of Hunter's vehicle. Defendants argue that plaintiff failed to prove that his torn ligaments and meniscus resulted from the present accident.
A plaintiff bears the burden of proving the causal connection between an accident and the injury by a preponderance of the evidence. A tortfeasor is liable only for the damages caused by his negligent or intentional act and not for damages by separate or intervening causes. Rhodes v. State DOTD, 94-1758 (La.App. 1st Cir.12/20/96), 684 So.2d 1134.
In the present case, defendants assert that plaintiff did not prove a causal connection between the January 22, 1997 accident and the meniscus and ACL tears shown on the October 1997 MRI, since the medical records do not contain a specific reference to left knee problems during that time period. Allstate argues that the plaintiff experienced a fall on January 6, 1997 that could have caused the left knee injuries. However, Dr. Bailey testified that a left knee injury could cause plaintiff's pain to extend up to the hip and down one-third of the way to the ankle. Thus, Poulan's description of his left leg pain on January 23, 1997 was consistent with a knee injury.
In addition, Poulan stated that when he stepped onto the curb with his left leg, Hunter's vehicle hit his trailing right leg and twisted his body to the left. Dr. Bailey testified that this type of twisting of the knee joint, with all of the body's weight on one leg and the foot planted, could cause a tear of the meniscus. Further, Dr. Bailey opined that such a twisting injury to the left knee was a more likely cause of plaintiff's meniscus tear than the type of blunt trauma that resulted from his fall on January 6, 1997.
Although the plaintiff did not specifically refer to his left knee on January 23, 1997, this omission may be explained by the fact that the accident did not involve a direct *1130 impact to plaintiff's left knee. We note that the plaintiff described left leg pain above and below the knee and reported a twisting injury consistent with a meniscus tear. Thus, the medical records demonstrate circumstances which support a finding of a causal connection between the accident and the meniscus tear shown on the October 1997 MRI. In addition, Dr. Bailey opined that given the plaintiff's continuing subjective complaints and symptoms, as confirmed by the MRI, the need for arthroscopic surgery of the left knee was more likely than not related to the most recent accident.
Based upon this record, we cannot say the trial court was clearly wrong in finding that the impact with Hunter's vehicle was more probably than not the cause of plaintiff's left knee injuries. The assignment of error lacks merit.
Damages
The defendants contend the trial court's general damage award to plaintiff of $32,000 for his left leg injuries is excessive. The plaintiff has answered the appeal requesting an increase in the general damage award. Before the trial court's damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. Jackson v. A.L. & W Moore Trucking, 609 So.2d 1064 (La.App. 2d Cir. 1992).
The finding of an abuse of much discretion must be based on the particular injuries sustained and their effect on the particular injured person. After a determination that an award is an abuse of discretion, the appellate court may lower an excessive award to the highest amount or raise an inadequate award to the lowest point reasonably within the factfinder's discretion. Jackson, supra.
In the present case, the evidence shows that plaintiff sustained a twisting injury to his left knee after being hit by Hunter's automobile. The day after the accident, plaintiff complained about left leg pain in the area around his knee. He reported his persisting symptoms to Dr. Bailey, who ordered an MRI of plaintiff's left knee in October 1997. The MRI showed swelling of the knee and possible tearing of the medial meniscus and the ACL of the left knee. Dr. Bailey recommended conservative treatment and stated that if plaintiff's symptoms continued, arthroscopic surgery of the left knee should be considered.
Plaintiff testified that after the accident his legs and knees were sore. Plaintiff stated that he continued to have pain and swelling in his left knee at the time of trial. The plaintiff testified that after the accident, he has been less able to ride his quarter horses because his knees and legs begin to hurt after riding for a brief time.
Based upon the testimony and the medical evidence in the record, and considering the particular effects of the plaintiff's injury to his left knee and the likely need for future surgery, we cannot say the trial court's award of $32,000 in general damages is beyond the amount reasonably within the factfinder's broad discretion. Thus, we decline to either reduce or increase the trial court's general damage award.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. The costs of this appeal are assessed equally to the appellants, Allstate Insurance Company and Linda Hunter.
AFFIRMED.

*1131 APPLICATION FOR REHEARING
Before BROWN, C.J., WILLIAMS, CARAWAY, KOSTELKA, and DREW, JJ.
Rehearing denied.