968 So.2d 346 (2007)
Deserae WILLIS, Individually and on Behalf of Her Minor Children, Aaron Willis, Jr., Ke`Era Willis, and Markaila Willis, and Ricky Monroe, Individually, Plaintiffs-Appellees
v.
SAFEWAY INSURANCE COMPANY OF LOUISIANA and Marcus Davis, Defendant-Appellant.
No. 42,665-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*347 Tracy L. Oakley, for Appellant Safeway Insurance Company of Louisiana.
W. Brett Cain, Shreveport, for Appellees.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
In this personal injury case arising from an automobile accident, the trial court found that the defendant insurer, Safeway Insurance Company of Louisiana, provided liability insurance covering the defendant driver, Marcus Davis; the court rejected Safeway's material misrepresentations defense and rendered a money judgment against Safeway. On appeal, we reverse and render judgment in favor of Safeway.

FACTS
In May 2003, Deserae Willis was driving her 1996 Dodge on Jewella Avenue in Shreveport, Louisiana. Her husband, Rickey Monroe, and three minor children were in the car with her. As she approached an intersection, a 1991 Chevrolet operated by Marcus Davis made a lefthand turn in front of Willis, causing a collision. The Chevrolet operated by Davis was owned by Chanesca Love.
Love was the named insured in an automobile liability insurance policy that was issued by Safeway and that listed the 1991 Chevrolet. When Willis, individually and on behalf of her minor children, and Monroe filed suit against Davis in Shreveport City Court, Safeway also was made a defendant. The petition alleged that Davis was either an insured or an omnibus insured under the Safeway policy.
Safeway answered the plaintiffs' petition, generally denying the allegations and raising the affirmative defense of material misrepresentations. Safeway alleged that Love submitted an application for insurance that failed to disclose Davis either as an operator of the vehicle, or as a member of her household. Safeway further alleged that if Love had disclosed Davis, then Safeway either would not have insured Love, or would have required a named driver exclusion for Davis. Safeway later amended its answer to add the affirmative defense of non-permissive use by Davis of Love's vehicle.
Safeway filed a motion for summary judgment in January 2007 addressing the defense of material misrepresentations. The motion came up for hearing just before *348 the time scheduled for trial on the merits. After hearing arguments, the trial court rejected summary judgment, and the case proceeded immediately to trial.
The first two witnesses were Willis and Monroe, who testified concerning the accident, injuries, and medical treatment. Davis testified next, indicating on direct examination that his "permanent address" at the time of the accident was 1329 Berchet, the address listed on the accident report. He indicated that he lived there with his grandmother and received his mail there. He also indicated that he had Love's permission to drive her vehicle on the day of the accident, and he admitted that the accident occurred when he made an unprotected left turn in front of Willis.
On cross-examination, Davis admitted that Love was his girlfriend and that, beginning in 2000, he would stay two to three weeks with Love, then go to his grandmother's house for two to three days, and then go back to stay with Love. This was the pattern at the time of the accident. Davis admitted that he kept most of his clothes at Love's house. He responded affirmatively when asked if his intent was to stay with Love and if he just went back to his grandmother's house to check on her and his child. With respect to driving Love's Chevrolet, he admitted that before the accident he drove the vehicle two or three times a week. He also conceded that while he and Love had talked about trying to get insurance to cover him, he couldn't get insurance because he didn't have a driver's license. According to Davis, he had never had a driver's license and while he planned to eventually get one, he just "never got a chance" to do so.
In response to questions by the trial judge, Davis indicated that he wasn't "officially" saying that he was staying at Love's residence because "that's her [mother's] house. You know what I'm saying. And I just come spend weekends or a week with her." He stated that he did not pay rent on Love's residence, and that he considered his grandmother's house to be his home.
Love testified that she and Davis had lived together since 1999, and she affirmed Davis' testimony that the routine since they had lived together was for him to stay with her for two to three weeks, then "go home" for two to three days, and then return. She indicated that she had given Davis permission to drive her car on the day of the accident, and she agreed with his testimony that before the accident he had driven the vehicle two to three times a week. She denied ever trying to get insurance for him.
Love was confronted with her application for insurance with Safeway. She acknowledged her signature and recalled being asked to list all the drivers of the vehicle and all the members of her household. However, even though she was living with her mother and Davis, she listed neither on the application, and when asked if she knew she was supposed to list her mother and Davis, she responded, "Yes sir." She indicated she did not list them because they were "barely driving" her car. She admitted that she knew that neither her mother nor Davis had a driver's license but she allowed them to drive her car anyway.
On cross-examination, she admitted that in her deposition she said that she and Davis first started living together around the time of the accident and that she didn't list Davis or her mother because it wasn't her intent for them to drive the car. She also admitted saying in her deposition that Davis had only driven the car two or three times, one of them being when the accident occurred. In response to a question by the trial judge, Love indicated that her failure to list Davis and her mother was *349 not an attempt to deceive the insurance company. Instead the only person she listed was her sister because "that's all I had to be driving my car was me and my sister."
The following colloquy with counsel for the plaintiffs occurred near the conclusion of Love's testimony:
Q. When you listed when you filled out this insurance application did you was it your belief at that time that the people that they wanted you to list were the people that were going to be driving your car?
A. Yes (inaudible)
Q. It wasn't your understanding that it was just anybody in the household.
A. No.
Q. And you didn't actually read all this you just had the agent explain it to you. Correct.
A. Yes (inaudible).
Q. And the way he explained it to you was it was somebody driving the car. Right. And you didn't have any intention of them driving the car when you filled out the application so you didn't list them. Correct.
A. Yes sir.
After both sides had rested and Safeway's counsel had introduced the entire record without objection, the court stated that "this is a tough one on the issue of credibility." With respect to whether Davis lived with Love, the court concluded that Davis always considered his grandmother's house to be his home. With respect to whether Love had actual intent to misrepresent or deceive, the court found that Love lacked such intent, noting, "Her statement was they didn't drive. Your application says regularly operate. She didn't feel that it was [regular] operation." The trial court rendered a money judgment in favor of the plaintiffs and against Safeway.
Safeway appealed.

LAW

Manifest error
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong; where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. State Department of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989).
To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.

Material misrepresentations
La. R.S. 22:619 provides:
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation *350 or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
We previously have held that in interpreting this statute, an insurer must prove that: (1) the insured made a false statement; (2) the false statement was material; and (3) it was made with intent to deceive. West v. Safeway Insurance Company of Louisiana, 42,028 (La.App.2d Cir.3/21/07), 954 So.2d 286; Dye v. Walker, 36,482 (La.App.2d Cir.10/23/02), 830 So.2d 429, writ denied, 2002-2868 (La.1/31/03), 836 So.2d 72. Because of the inherent difficulties of proving intent, strict proof of fraud is not required to show intent to deceive. The intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations. Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La.1979); Watson v. Life Insurance Company of Louisiana, 335 So.2d 518 (La.App. 1st Cir.1976). A statement is material if it is of such a nature that, had it been true, the insurer either would not have contracted, or would have contracted only at a higher premium rate. West, supra; Martin v. Security Industrial Insurance Co., 367 So.2d 420 (La.App. 2d Cir.1979), writ denied, 369 So.2d 1364 (La.1979).

INSURANCE APPLICATION
In section five of the one-page insurance application, it states that the applicant warrants there are no other persons of legal driving age in the household other than those listed below; the applicant and her sister Shemekia Love are the only persons listed. The application specifies that any driver whose driver's license is under suspension or has no license must be excluded by endorsement. Also in section five, another question asks if there are any other members of the household; the "no" box is marked.
Section 10 of the application states as follows:
APPLICANT'S STATEMENT: The applicant hereto, states that he/she read this application and attests that all answers given by him/her to the questions asked herein are truthful to the best of his/her knowledge and belief and that said answers were made as inducement to the insurance company to issue a policy. Applicant further states that there are no individuals actually living in the same household as applicant, whether or not a licensed driver, other than those listed in section 5. Applicant further warrants that no individuals, other than those listed in Section 5, regularly operate the vehicle(s) described in this application or any other vehicles which may be later added to any policy issued as a result of this application. It is a special condition of this policy that the policy shall be NULL and VOID and of no benefit or effect whatsoever as to any claim arising thereunder in the event there are any material misrepresentations made with an intent to deceive in this application. It is understood that a *351 copy of this application was provided to the applicant and shall be attached to and form a part of the policy of insurance when issued and that it is intended that the company shall rely on the contents of this application in issuing any policy of insurance or renewal thereof.
At trial, Love acknowledged her signature at the end of this section.

DISCUSSION
Despite the great deference we have afforded to the trial court's factual findings, we conclude that the trial court was clearly wrong in rejecting Safeway's material misrepresentations defense.
As noted above, section five of the application asked if there were any other persons of legal driving age in the household. Love listed only herself and her sister in this section, even though she admitted at trial that she knew she should list her mother and Davis. Her excuses that her mother and Davis were "barely driving" the vehicle and that she did not intend for them to drive the vehicle are unpersuasive. Both Love and Davis admitted that he had been driving the vehicle two or three times a week prior to the accident. They both admitted that Davis stayed at Love's residence all but two or three days out of every two to three week period before the accident. Additionally, the same section contained this statement: "Any driver whose driver's license is under suspension or has no license, must be excluded by Endorsement." Plainly, Davis had no license, and his testimony indicated Love was aware of this fact.
Under these circumstances, there can be no question that Love made false statements in the application. Furthermore, there can be no doubt that these statements were material because, had Safeway known that Davis regularly lived the great majority of his days in Love's residence and drove her car two or three times a week with her permission, but without a driver's license, Safeway would not have insured Love. Thus, the only remaining question concerns Love's intent to deceive, and the attendant circumstances here create a reasonable assumption that Love recognized the materiality of the misrepresentations. Despite her excuses, Love must be held to recognize that allowing the unlicensed Davis, who lived on a regular basis at her residence, to drive her car two or three times a week was exactly the kind of information sought by the insurer in section five of the application. This would have been true even without that section's explicit requirement of exclusion by endorsement of an unlicensed driver.
Section 10 of the application warned that the policy would be null and void if material misrepresentations were made with intent to deceive in the application. This statement clarifies the importance of providing correct information, not only about other individuals living in the household, but also about individuals regularly operating the vehicle; Davis was both.
The trial court found no intent to deceive on Love's part, stating, "Her statement was they didn't drive. Your application says regularly operate. She didn't feel that it was [regular] operation." This rationale was incorrect. First, Love's statement was not that Davis didn't drive the vehicle, but that he did drive the vehicle two or three times a week. Second, the only reasonable conclusion is that this was regular operation of the vehicle, despite what Love may have said she "felt" in this regard. Additionally, we note that while the court concluded that Davis always considered his grandmother's house to be his home, Davis did not apply for the insurance, and the objective evidence left no doubt that he resided the great majority *352 of his time under Love's roof, not his grandmother's.
The evidence presented at trial established the reasonable assumption that Love recognized the materiality of her misrepresentations. Therefore, we hold that the trial court was clearly wrong in rejecting Safeway's affirmative defense.

CONCLUSION
The trial court judgment against Safeway is reversed, and we render judgment in favor of Safeway. Costs are assessed to the plaintiffs.
REVERSED AND RENDERED.