WILLIAMS, J.
 

 | jThe plaintiff, Eureka Demery, appeals a judgment awarding her $6,000 for the repair of property damage caused by a leaking drainage pipe. The defendant, City of Shreveport, answers the appeal seeking reversal of the judgment, or alternatively, a reduction of the award. For the following reasons, we affirm.
 

 
 *39
 
 FACTS
 

 In October 1998, Eureka Demery purchased a house located at 857 Sherwood Drive in Shreveport. In 2004, Demery complained to the City of Shreveport (“the City”) about a sink hole in her yard near the rear of the house. City officials investigated the problem and found a leak in a city drainage pipe running under Demery’s backyard and alongside her house. The City determined that a repair was not possible and that the drainage pipe would need to be relocated. Demery granted a right-of-way to the City, which rerouted the drainage line to run along a public street and across the front of Demery’s property. In addition, the City installed catch basins at two points where the drainage pipe changed direction. The relocation project was completed in 2005 and the old pipe underneath Demery’s backyard was plugged with concrete.
 

 In September 2005, the plaintiff, Eureka Demery, filed a petition for damages against the defendant, the City, alleging that she had sustained property damage and emotional distress as a result of the City’s failure to properly maintain the drainage pipe. After the plaintiff failed to file the pretrial order and submit an expert witness report as required by the trial court’s scheduling order, the City filed a motion in limine to exclude all of 12plaintiff s witnesses and exhibits from evidence. The court granted the motion as to several witnesses and denied it as to some others, but the court prohibited plaintiff from introducing any documentary evidence at trial. Plaintiff applied for a writ to review the trial court’s order. This court granted the writ and reversed the trial court’s order, but imposed sanctions on plaintiffs counsel for his egregious failure to respond to the scheduling order.
 
 Demery v. City of Shreveport,
 
 43,651 (La. App.2d Cir.5/22/08).
 

 Subsequently, the plaintiff filed an amended petition alleging that at the time she bought the house, the City committed fraud by failing to inform her about the drainage pipe under the property and about prior complaints of drainage problems by former owners and neighbors. In response, the City filed an exception of vagueness on the grounds that plaintiffs allegations of flooding and fraud lacked any specificity. The trial court sustained the exception of vagueness and allowed plaintiff 10 days to amend the pleading with additional facts concerning the allegations of fraud and flooding. The plaintiff did not supplement her pleadings.
 

 Following a bench trial, the court found that the leak in the drainage pipe caused soil erosion, which resulted in a sink hole and minor settlement of the addition on the back of the house. The court further found that plaintiff failed to present sufficient evidence to establish that the City was liable for her emotional distress or the alleged flooding of her house. The court rendered judgment awarding $6,000 in damages to the plaintiff for the cost to stabilize the structure and fill the sink hole. Plaintiff appeals the judgment and seeks additional damages. The City answered the appeal, ^alleging that the damage award should be reduced.
 

 DISCUSSION
 

 In two assignments of error, the plaintiff contends the trial court erred in awarding an inadequate amount of damages. Plaintiff argues that the property damage to her house caused a psychological trauma that aggravated her emotional distress.
 

 In the assessment of damages for personal injury, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1. General damages involve mental or physical pain and suffering, in
 
 *40
 
 convenience and loss of intellectual or physical enjoyment that cannot be definitively measured in monetary terms.
 
 Day v. Ouachita Parish School Board,
 
 35,831 (La.App.2d Cir.8/8/02), 823 So.2d 1039;
 
 Robbins v. State Dept. of Labor,
 
 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991. Before the trial court’s general damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award.
 
 Poulan v. Hunter,
 
 36,225 (La.App.2d Cir.11/6/02), 830 So.2d 1125;
 
 Day, supra.
 

 The mental anguish which gives rise to a claim of damages must be real mental injury.
 
 Kemper v. Don Coleman, Jr., Builder, Inc.,
 
 31,576 (La.App.2d Cir.7/29/99), 746 So.2d 11. Every incident of property damage is necessarily accompanied by some degree of worry or consternation. However, recovery of damages requires the plaintiff to have suffered psychic trauma in the nature of a physical injury as a direct result of the incident which caused the property damage.
 
 Kem-per, supra.
 
 The trial court’s findings of fact are subject to the manifest error standard of review. |4The appellate court must determine whether the factfinder’s conclusion is reasonable based upon the record as a whole.
 
 Graves v. Page,
 
 96-2201 (La.11/7/97), 703 So.2d 566.
 

 In the present case, the plaintiff presented the testimony of Dr. Gary Milford, a psychologist, who stated that he first saw plaintiff in March 2005, on a referral from her attorney in a lawsuit against her employer, Kansas City Southern Railroad (“KCS”). Dr. Milford testified that he was not aware that plaintiff was having a problem with her house until one year later, in March 2006, when she cancelled an appointment to go to court on a matter involving her house. Dr. Milford stated that the problem with her house would have been a source of stress for plaintiff, but he could not draw a direct cause-and-effect relationship between the situation with her property and her depression. Dr. Milford testified that plaintiff expressed worry that if her employer closed its local office, she would be unable to sell her house if she needed to move. He stated that in 2005, plaintiff reported that the major stressor in her life was the denial of her request for a promotion at work, and that she felt worthless and distraught as a result.
 

 The plaintiff, Eureka Demery, testified that she bought the house at 857 Sherwood in October 1998. She stated that after moving into the house she saw that the wood floor in one bedroom was buckling, there were a number of cracks in the interior and exterior walls and a sink hole in the backyard. Plaintiff testified that prior to moving into the house, she was outgoing and participated in activities with her four daughters, but during their first year in the home she grew frustrated with the damage in the |shouse, became short-tempered and withdrew emotionally from her children. Plaintiff stated that she did not have depression before purchasing the house, but she became upset because she felt that she had let down her children in buying a damaged house. Plaintiff testified that while living in the house, she was also having problems with harassment at her job and had filed a federal lawsuit in 2005 alleging a hostile work environment. She stated that in January 2005, she went to the emergency room at Willis Knighton Health Center (“Willis Knighton”) feeling depressed with suicidal thoughts, and was diagnosed with depression. Plaintiff was hospitalized again in October 2005, shortly after returning to work following an absence and after learning of the leaking drainage pipe. Plaintiff testified that her problems at work continued and she was admitted to the hospital for depression in December 2005, after she “experienced
 
 *41
 
 something” on the job. She stated that at the time of trial she was still being treated by a psychologist and taking antidepressant medications.
 

 The plaintiff introduced into evidence the medical records of Willis Knighton, of Drs. Brian Babiak and Lloyd Bellah, psychiatrists, of Drs. Milford and Ronald Goe-bel, psychologists, and of Dr. Richard Sipes. The Willis Knighton emergency department records show that on January 21, 2005, the plaintiff presented complaining that she was “stressed out” because of problems with her job and that she was thinking of killing herself. The emergency medicine physician noted in his report that plaintiff denied having been depressed before. In his January 2005 discharge summary, Dr. Babiak noted that plaintiff denied any past psychiatric illness |fiand that her main stressor was difficulty with coworkers. In the May 2005 discharge summary, Dr. Babiak reported that plaintiff had been hospitalized for depression after being involved in an altercation at work.
 

 The records of Dr. Sipes show that he began treating plaintiff for hypertension in 2002. During a visit in July 2004, plaintiff complained of stress related to problems at work and said that she feared losing her job. In September 2004, Dr. Sipes noted that plaintiff was still very upset about work and was hiring a lawyer. Plaintiff also complained about stress from her job in November 2004, January 2005 and December 2005. Dr. Sipes’ records do not indicate that plaintiff ever mentioned any anxiety regarding her house. Nor do the records of Drs. Bellah or Goebel contain any reference by plaintiff to house foundation problems as a source of her depression and anxiety.
 

 The trial court considered the medical evidence and the credibility of the plaintiff. Based upon this record, we cannot say the trial court was clearly wrong in finding that plaintiff failed to satisfy her burden of proving that she sustained psychic trauma as a result of the drainage pipe leak which caused the property damage. Consequently, the trial court did not err in declining to award plaintiff damages for emotional distress. Thus, the assignments of error lack merit.
 

 Loss of Enjoyment
 

 The plaintiff contends the trial court erred in failing to award her damages for loss of enjoyment of life. Plaintiff argues that because of the property damage caused by the City, she felt embarrassed and was less able 17to participate in school and church activities with her children.
 

 Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person’s life or lifestyle, or a person’s inability to participate in the activities or pleasures of life that were formerly enjoyed.
 
 McGee v. A C and S, Inc.,
 
 05-1036 (La.7/10/06), 933 So.2d 770;
 
 Day, supra.
 
 Loss of enjoyment of life is a compensable component of general damages under LSA-C.C. art. 2315 and the jurisprudence.
 
 McGee, supra.
 
 A plaintiff is entitled to recover damages for loss of enjoyment of life if she proves that her lifestyle was detrimentally altered or that she was forced to give up activities because of her injury.
 
 McGee, supra; Day, supra.
 

 Initially, we note that the plaintiff cannot recover damages for loss of enjoyment of life because, as stated above, she failed to prove the necessary element of a personal injury resulting from the property damage. Even if we were to assume there was an injury, the testimony of plaintiff and her daughter did not demonstrate that the City’s act caused any detrimental alteration of the plaintiffs lifestyle or an inability to participate in activities as be
 
 *42
 
 fore. Thus, the record does not support an award of damages for loss of enjoyment of life. The assignment of error lacks merit.
 

 Economic Loss
 

 The plaintiff contends the trial court abused its discretion in failing to award sufficient damages for the repair of all property damage. Plaintiff argues that the damage award was inadequate to compensate her for lost economic value of the house based on the evidence of major structural | sdamage.
 

 The factfinder’s choice between two permissible views of the evidence cannot be manifestly erroneous.
 
 Willis v. Safeway Insurance Company of Louisiana,
 
 42,665 (La.App.2d Cir.10/24/07), 968 So.2d 346. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
 
 Cole v. State Department of Public Safety & Corrections,
 
 01-2123 (La.9/4/02), 825 So.2d 1134;
 
 Willis, supra.
 

 Dean Cole, vice-president of Interstate Foundation (“Interstate”), testified that he had inspected the plaintiffs property five times from 1987, when an addition was stabilized for a prior owner, to August 2005. Cole stated that in 2000, someone else from Interstate visited the property in response to a call from plaintiff. Cole testified that the minor cracks observed in the interior walls at the time had resulted from slight movement of the foundation caused by expansion and contraction of the soil due to moisture changes. Cole stated that in June 2004, the plaintiff called about a 2-feet deep hole that had developed near the chimney at the rear of her house and he sent workers to pack the hole with clay. He testified that when plaintiff called in October 2004, the hole needed to be filled again and he learned there was a drainage pipe underground that apparently was leaking and washing away the soil. Cole stated that plaintiff called again in August 2005, and he saw that the addition at the rear of the house had resettled in the same location as in 1987. Cole testified that in 2005, the extent of movement was approximately one-half to three-fourths of an inch and that |9the original footings would need to be replaced at a cost of $3,250, plus $500 for an engineering report. He stated that the settlement of the addition after 17 years indicated that something significant had occurred, other than the normal expansion and contraction of the underlying soil. However, Cole testified that the extent of the addition’s movement was “not major” and that the slab under the original house had remained level.
 

 Plaintiffs expert in structural engineering, Dr. Austin Pan, reviewed the report prepared by NTB Associates (“NTB”), which had been hired by the City, describing certain problems with the condition of the house, such as cracking of the exterior brick veneer, cracks in the interior walls and ceilings and hairline cracks in the foundation. The report also noted various other damage, including separation between the window framing and the wall and between the brick veneer and the siding. Pan stated that the three holes observed in the front yard by Interstate in 1991 could have been caused by a leak in the City’s drainage pipe at the time. Pan testified that the drainage pipe “might have been leaking” before 1987, based on the two inches of settlement found by Interstate that year. He did not agree with NTB’s conclusion that the observed damage in the exterior and interior of the residence was consistent with minor movement of the slab and materials caused by changes in temperature and moisture. Pan testified that the report showed extensive damage to the house that more likely than not was due to major soil loss from
 
 *43
 
 under the house’s foundation caused by the leaking pipe. Pan opined that given such major damage, the cost to repair the structure outweighed the value of the house and he recommended tearing | indown and rebuilding the house. The plaintiff also presented the testimony of Evora Morrison, a real estate broker, who testified that if there was a problem with the foundation of the house, she would not list the property for sale and the house could not be sold at the price plaintiff wanted.
 

 The trial court heard conflicting testimony regarding the extent of damage caused to plaintiffs house and the cost of repair. The court considered the evidence and weighed the credibility of the witnesses. The trial court found that Cole was the most credible witness because his estimate of the cost to stabilize the structure was not prepared for litigation, but was based upon his substantial experience, and his testimony was consistent with the factual situation shown by the evidence presented. The court’s decision to give greater weight to Cole’s testimony is supported by this record. Thus, we cannot say the trial court erred in awarding damages based upon Cole’s estimate.
 

 In its answer to the appeal, the City argues that the trial court’s award of $6,000 exceeds the cost of the repair work proven at trial and should be reduced. In making the damage award, the trial court noted that Cole had given his estimate in 2005, approximately 4 years before the date of trial, and that costs could be expected to have increased during that period. The Interstate estimate provided for excavation of the site, pumping of slurry to fill voids and stabilize the subsoil, lifting the structure to a level point, and the removal and replacement of concrete footings to support the structure. In light of the work proposed and the passage of time since the estimate was prepared, we cannot say the trial court abused its discretion in awarding an Inamount sufficient to provide for an increase in the cost of labor and materials that could reasonably be anticipated in the interim between the date of the estimate and the date of judgment. Consequently, the City’s argument lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the appellant, Eureka Demery.
 

 AFFIRMED.