*983
 
 WILLIAMS, J.
 

 LThe City of Shreveport appeals a judgment in favor of Kedgy Jean Larson for injuries sustained in an auto accident. The trial court found that Larson’s injuries were caused by the December 2001 accident and awarded damages of $230,626.32. Larson also appeals, alleging that the trial court’s damage award was inadequate. For the following reasons, we amend and affirm as amended.
 

 FACTS
 

 In December 2001, an accident occurred in Caddo Parish when Kedgy Larson’s automobile was struck by the vehicle driven by Lane Montgomery while in the course and scope of his employment as a Shreveport police officer. In June 2002, the plaintiff, Montgomery, filed a petition for damages against Kedgy Jean Larson (incorrectly identified as Jean Lawson Ked-gy) and her insurer, State Farm Mutual Auto Insurance Company (“State Farm”). Subsequently, Larson and her husband, Lawrence Larson, filed a counter claim against Montgomery, the City and State Farm, alleging that Montgomery was solely at fault in causing the accident. State Farm filed a claim against Montgomery and the City to recover $6,461.98 paid to Larson for medical expenses.
 

 The case was bifurcated and after a bench trial on the liability issue, the trial court rendered judgment in favor of Larson, finding that Montgomery was 100% at fault in causing the accident and that the City was liable for damages. The City did not seek appellate review and the liability determination is final. State Farm filed a motion for summary judgment against the City seeking reimbursement of the payment of medical |2costs. After a trial on the issue of quantum, the court found that the medical evidence proved that Larson’s injuries were caused by the December 2001 accident. The trial court rendered judgment awarding Larson special damages of $80,626.32 and general damages of $150,000. The court granted summary judgment in favor of State Farm. The City appeals the judgment, alleging that the evidence showed Larson sustained only soft tissue injuries and that the damage award is excessive. Larson appeals alleging that the damage award is inadequate.
 

 DISCUSSION
 

 The City contends the trial court erred in finding that Larson proved that all of her injuries were caused by the December 2001 accident. The City argues that the medical evidence showed that her serious injuries were at least partly caused by a subsequent accident or by her active lifestyle.
 

 In a personal injury action, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident at issue.
 
 Maranto v. Goodyear Tire & Rubber Co.,
 
 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757. The plaintiff must prove causation by a preponderance of the evidence.
 
 Maranto, supra.
 
 The test for proving the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the injuries were caused by the accident.
 
 Maranto, supra.
 
 A plaintiff is aided in proving causation by the presumption that an injury resulted from an accident if before the accident the injured person was in good health, but commencing with the accident the disabling symptoms appear and 1 .^¡continuously manifest themselves afterward, providing that the medical evidence demonstrates a reasonable possibility of causal connection between the accident and the injury.
 
 Mar-anto, supra; Housley v. Cerise,
 
 579 So.2d 973 (La.1991);
 
 Saunders v. ANPAC Loui
 
 
 *984
 

 siana Insurance Co.,
 
 43,405 (La.App. 2d Cir.8/13/08), 988 So.2d 896.
 

 In the present case, Larson introduced into evidence the testimony of a number of physicians, including Dr. Baer Rambach, an orthopedic surgeon. On December 12, 2002, Dr. Rambach examined Larson, who complained of numbness in her right hand, both wrists and continuing low back pain following the December 2001 accident. Dr. Rambach testified that the electro diagnostic (EMG) test results showed severe carpal tunnel impairment of Larson’s right wrist and moderately severe impairment of her left wrist. Dr. Rambach stated that a person like Larson, who was 50 years old with early degenerative changes in the lumbar and cervical spine, was more prone to have prolonged lower back and neck problems from an accident than a younger person. Given Larson’s lack of a prior wrist injury and her description of gripping the steering wheel during the collision, Dr. Rambach opined that more likely than not the December 2001 accident was a cause of Larson’s carpal tunnel syndrome in both wrists.
 

 Dr. Roger Kelley, who performed the independent medical exam (IME), opined that Larson’s carpal tunnel injury could not be directly attributed to the accident and that in his experience, such an injury more likely occurred over time with repetitive actions like lifting weights. However, Dr. Kelley acknowledged that the EMG results objectively |4documented Larson’s carpal tunnel syndrome (CTS) and that there appeared to be a temporal relationship between the 2001 accident and her symptoms. In addition, Dr. Kelley testified that if Dr. Rambach had seen the patient and could say that more likely than not the CTS was related to the 2001 accident, then he could not dispute that opinion.
 

 Dr. Robert Zahn, a chiropractor, testified that he saw Larson on December 26, 2001, and she complained of neck pain and low back pain extending into the right leg after the accident on December 15, 2001. Dr. Zahn stated that on November 11, 2002, Larson complained of right knee pain and low back pain. Dr. Zahn’s records included a report from Greenacres Chiropractic Clinic, dated March 6, 2003, showing that Larson was complaining of pain in the right knee and lower back. Dr. Zahn testified that he saw Larson on June 2, 2003, when she complained of headaches and bruises on her left shoulder and hip following an accident on May 29, 2003, but she did not say that she had injured her right knee in that accident. Dr. Zahn stated that his treatment of Larson from December 26, 2001 through March 2003 was related to the December 2001 accident.
 

 Dr. Edward Morgan, an orthopedic surgeon, testified that in September 2005 he saw Larson, who was seeking a second opinion for her right knee. Dr. Morgan stated that Larson complained that a locking of her right knee had been causing pain since May 2005. Dr. Morgan explained that although the MRI of Larson’s right knee did not show a meniscus tear, the mechanical difficulties she was having with the knee were consistent with a tear. Dr. Morgan testified that he performed arthroscopic surgery |fiwhich showed a lateral meniscus tear. Assuming that Larson’s complaints of right knee pain began after the December 2001 accident and continued through another accident in 2003, Dr. Morgan opined that more likely than not Larson’s right knee injury was caused by the December 2001 accident.
 

 Dr. Pierce Nunley, an orthopedic spine surgeon, testified that he saw Larson on March 16, 2005, and she gave a history of auto accidents in 2001 and 2003. Dr. Nun-
 
 *985
 
 ley stated that Larson complained of low back pain radiating into her right leg and that on a scale of 1 to 10, she said her daily pain was 3 and sometimes as high as 8. Dr. Nunley testified that Larson’s lumbar MRI showed a herniated disc at the L4-5 level and spondylosis. Assuming that Larson had not experienced low back pain radiating into the right leg prior to the 2001 accident, but after that accident she began and continued to complain of such pain, Dr. Nunley opined that more likely than not the lumbar disc herniation was caused by the December 2001 accident. Although Dr. Nunley could not state whether the degenerative changes in Larson’s back were present before the accident in 1999 or 2001, he noted that Larson’s history of radiating low back pain predated the May 2003 accident. In addition, Dr. Nunley testified that the medical records did not show that the 2003 accident involved a problem significantly worse than the back injury which Larson was already complaining about.
 

 Kedgy Larson, who was an owner and operator of a fitness center, testified that she was in good physical condition without any health problems prior to the December 2001 auto accident. Larson stated that she felt neck pain at the time of the accident and she sought chiropractic | (¡treatment with Dr. Zahn, complaining of low back pain radiating into her right leg and tingling in her arms and hands. Larson testified that during 2002, she experienced pain and swelling of her right knee and continued to feel neck and back pain with numbness and tingling in both hands. Larson stated that when her condition did not significantly improve after one year of conservative treatment, she saw Dr. Ram-bach, who diagnosed her with CTS in both wrists in January 2003. Larson attempted conservative treatment of the CTS with wrist splints, ice and Advil, while continuing to experience right knee and low back pain. Larson testified that in the May 2003 accident she hit the left side of her head and bruised her left shoulder and left hip. Larson stated that after the 2003 accident, she continued to feel right knee and low back pain and numbness and tingling in both wrists. Larson explained that when her condition did not improve, she underwent carpal tunnel release surgery in April 2005. Larson testified that in March 2005 she saw Dr. Nunley, who diagnosed her with a lumbar disc herniation and prescribed physical therapy. Larson stated that a locking problem developed in her right knee in May 2005 and that Dr. Morgan removed the torn meniscus in September 2005, after which she participated in physical therapy at Schum-pert Hospital. Larson testified that she had experienced intermittent pain in her right knee, lower back and neck every week since the December 2001 accident.
 

 At trial, Larson presented the medical testimony of orthopedic surgeons who opined that more likely than not her carpal tunnel syndrome, right knee meniscus tear and lumbar disc herniation were caused by the |7December 2001 accident. Larson testified that she was free of pain and enjoyed a physically active lifestyle prior to the 2001 accident. No evidence was introduced to negate the testimony that she was in good health prior to that accident. The medical records show that following the 2001 accident, Larson experienced neck, lower back and right knee pain and numbness in her wrists and hands.
 

 Based upon this record, Larson demonstrated at trial that she was in good health before the December 2001 accident and that beginning with the accident her symptoms appeared and continued thereafter. In addition, she presented medical evidence showing a reasonable causal connection between the accident and her injuries.
 
 *986
 
 Consequently, the trial court could reasonably have found that Larson satisfied her burden of proving that her injuries were caused by the 2001 accident. The assignment of error lacks merit. Since we have affirmed the trial court’s finding of causation, the court did not err in granting State Farm’s motion for summary judgment.
 

 Quantum
 

 Both parties contend the trial court erred in awarding damages. The City argues that the damage awards should be reduced because Larson failed to prove that all of her injuries were caused by the 2001 accident. Larson argues that because the court abused its discretion in awarding inadequate general damages the award should be increased.
 

 In the assessment of damages for personal injury, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1. General damages involve mental or physical pain and suffering, inconvenience and loss of [ Rintellectual or physical enjoyment that cannot be definitively measured in monetary terms.
 
 Day v. Ouachita Parish School Board,
 
 35,831 (La.App. 2d Cir.8/8/02), 823 So.2d 1039;
 
 Robbins v. State Dept, of Labor,
 
 31,590 (La.App. 2d Cir.2/24/99), 728 So.2d 991. Before the trial court’s general damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award.
 
 Poulan v. Hunter,
 
 36,225 (La.App. 2d Cir.11/6/02), 830 So.2d 1125;
 
 Day, supra.
 

 The finding of an abuse of discretion must be based on the particular injuries sustained and their effect on the particular injured person. After a determination that an award constitutes an abuse of discretion, the appellate court may reduce an excessive award to the highest amount, or increase an inadequate award to the lowest amount, reasonably within the factfinder’s discretion.
 
 Poulan, supra; Day, supra.
 

 In the present case, the evidence shows that Larson suffered multiple injuries as a result of the 2001 accident, including carpal tunnel syndrome of both wrists, a meniscus tear of the right knee and a herniated disk in the lumbar spine. Larson has undergone surgical procedures of her left wrist and right knee to address those injuries and she participated in physical therapy for a number of years. Larson testified that although her treatment had reduced pain and increased function in her right knee and improved her lower back condition, she continued to feel minor pain in those areas at the time of trial. Larson did not miss any days from work because of the accident, but she taught fewer exercise classes and lifted less weight.
 

 Based upon the testimony and medical evidence contained in the 19record and considering the effects of the particular injuries sustained by Larson on her physical condition and lifestyle, we cannot say the trial court’s award of $150,000 in general damages is beyond the amount reasonably within the factfinder’s broad discretion. Thus, we decline to either reduce or increase the award of general damages.
 

 Larson also contends the trial court erred in failing to award the full amount of Larson’s proven medical expenses. Specifically, Larson complains that the court arbitrarily awarded only 50% of the cost for Larson’s physical therapy with Richard Dechowitz and refused to award an amount for her massage therapy.
 

 A plaintiff is required to prove special damages by a preponderance of the evidence and the district court’s findings in this respect are subject to a manifest error standard.
 
 Johnson v. State Dept, of Public Safety,
 
 95-0003 (La.App. 1st
 
 *987
 
 Cir.10/6/95), 671 So.2d 454. Medical expenses are a proper item of damages. The failure to award the full amount of medical expenses proven by a victim is error.
 
 Sumrall v. Sumrall,
 
 612 So.2d 1010 (La.App. 2d Cir.1993). A tortfeasor is required to pay for the cost of over treatment or unnecessary medical treatment, unless such treatment was incurred by the victim in bad faith.
 
 Green v. Nunley,
 
 42,-343-344 (La.App. 2d Cir.8/15/07), 963 So.2d 486;
 
 Sumrall, supra.
 

 In this case, Larson presented the testimony of Richard Dechowitz, a licensed physical therapist working at Schumpert Hospital. Dechowitz testified that in January 2006, Larson was referred by Dr. Morgan for right knee and lower back rehabilitation following her arthroscopic surgery. | inDechowitz stated that he treated Larson from January 12, 2006 through May 9, 2007, when she was discharged from physical therapy. Dechowitz testified that during the 15-month period Larson participated in physical therapy sessions 2 or 3 times per week, for a total of approximately 150 therapy sessions. Dechowitz stated that he submitted his therapy reports to Schumpert and was not involved with the hospital billing. He testified that Larson was conscientious, a very hard worker and an excellent patient.
 

 The physical therapy treatment records show that each session generally involved exercise, manual therapy, electrical stimulation and cold packs. The billing records demonstrate that for the period from January 2006 through the discharge date, the total amount for physical therapy equaled $55,647.18. The record indicates that the physical therapy was related to her injuries from the 2001 accident and the City did not present evidence that Larson incurred the expenses in bad faith. Thus, we must conclude that the trial court erred in failing to award the additional amount of $21,934.04 for physical therapy through May 9, 2007.
 

 In addition, the trial court erred in refusing to award Larson the amount of $5,519 for massage therapy, since there was no evidence that Larson incurred that expense in bad faith. Dr. Zahn recommended the massage therapy, which included muscle stretching and hot and cold packs for inflammation. Accordingly, we shall amend the judgment to reflect an additional award of $27,453.04 in special damages.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is amended to |uincrease the award of special damages and Kedgy Larson is hereby awarded the amount of $258,079.36 in total damages. The judgment is otherwise affirmed. The parties are to pay their own costs of appeal; thus, the amount of $145.50 is assessed to the City of Shreveport as appeal costs payable to this court.
 

 AMENDED AND AFFIRMED AS AMENDED.