Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,699-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHIRLEY BURKS                                      Plaintiff-Appellee

versus

WAYNE HOGAN AND                          Defendants-Appellees
JAHANGIR JAHANGIRI NEJAD

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-CV-01574

Honorable Tammy Deon Lee, Judge

* * * * *

SHIRLEY BURKS                                      In Proper Person
                                                             Plaintiff-Appellee

ALI MOGHIMI                                        In Proper Person,
                                                             Defendant-Appellant

* * * * *

Before STEPHENS, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Defendant, Ali Moghimi, appeals a trial court judgment in favor of plaintiff, Shirley Burks, finding him liable to plaintiff and awarding $1,627.45 in special damages and $2,500 in general damages. For the following reasons, we reverse the trial court's judgment.

## FACTS

In July 2022, plaintiff, Shirley Burks, directed her son to take her 2006 BMW 750Li to a repair shop located at 2111 Louisville Avenue in Monroe. According to the invoice/repair order provided to plaintiff, the name of the repair shop was Twin City Motors, Inc. ("Twin City Motors"); however, according to the credit/debit card receipt, the shop's name was "European Service."

Prior to having her son drop off the car at Twin City Motors, plaintiff had spoken with the service manager and reported the vehicle's air conditioner was "blowing hot air," the vehicle was emitting "white smoke" and would randomly shut off, and the brake light would not disengage. Plaintiff also reported her vehicle was covered under two third-party vehicle repair warranties issued by Car Shield and Endurance.[1] Plaintiff was told Twin City Motors accepted both warranties. However, she later discovered the diagnostic fee was considered maintenance and was not covered under the warranty.

After examining the vehicle, the mechanic noted the vehicle had a broken AC drive belt, leaking valves, and it needed a fuel induction flush,

---

[1] Plaintiff learned the Endurance warranty was invalid because the warranty covered a previous vehicle plaintiff had owned, and the vehicle identification numbers did not match.

new spark plugs, and "clean throttle body."  The mechanic also observed the brake light would not go off, and he "cleared" the code to disengage the brake light.  Plaintiff was charged $282.45 for the diagnostic check, labor, supplies, and taxes.[2]

Plaintiff protested the charge, and according to her, the service manager told her the vehicle would not be released to her until she paid the fees.[3]  Plaintiff paid the amount using her bank/debit card; however, she later directed her bank to "stop payment" on the charges.  Ultimately, the bank reinstated the payment after it received documents to disprove a "fraudulent" charge.

---

[2] More specifically, the repair order provided, in relevant part:

Diagnostics

| Labor | Tech | Hrs | Price | Total |
|---|---|---|---|---|
| Diagnostics | 01 | 1.50 | 1.55.00 | 232.50 |
| | | Diagnostics | SubTotal | $232.50 |

Park/Brake Light Is On And Will Not Go Off

Work Performed
Cleared codes and brake light is now out

| Park/Brake Light is On And Will not Go Off | SubTotal | $0.00 |
|---|---|---|
| | Labor | 232.50 |
| | Parts | 0.00 |
| | *** | |
| | Supplies | 23.25 |
| | Taxes | 26.70 |
| | Invoice Total | $282.45 |
| | *** | |

Additionally, the repair contained handwritten notations of recommended repairs to the vehicle.  Twin City Motors estimated the cost of the recommended repairs would range from $4,000 to $5,000.

[3] The service manager, Greg Dyess, denied withholding plaintiff's car key.  He testified his general practice was to return the key to the customer's vehicle after they paid the invoice, and in this case, he did not return plaintiff's key until after she paid the bill.

2

On September 6, 2022, plaintiff, acting in proper person, filed a fill-in-the-blanks form petition in Monroe City Court. She named as defendants Wayne Hogan (Manager), Jahangir Jahangiri Nejad (agent), and "Twin Cities Motor." She alleged she handed Hogan her debit card to pay the diagnostic fee, believing the fee would be $25-$50. However, she later learned she had been improperly charged $282.45, which she did not believe she owed "for something he wrote on paper." Plaintiff also claimed Hogan forged her son's signature on the repair order,[4] and she asserted Hogan should "go to jail."

Plaintiff later amended the petition to name as defendants Gilmer Hingle, the comptroller for Twin City Motors, and Wayne Hogan. Plaintiff prayed for a judgment "finding Mr. Hogan wrong . . . after he forged by son [sic] name on these papers. I want Mr. Hogan arrested." Plaintiff also stated, "Mr. Hingle is barred"; however, she did not make any specific allegations against him.[5] Plaintiff requested service on Hingle and Hogan.

Hogan, in proper person, filed a dilatory exception of vagueness. At the hearing on the exception, Hogan argued he is a mechanic employed by Twin City Motors, and plaintiff should have sued Twin City Motors, rather than suing him personally. According to Hogan, he was "just an employee," who worked in the shop and diagnosed vehicles, and he had no legal interest in the business. He stated he was "not in charge of cashing out tickets[,]

---

[4] This allegation was later disproven when James Burks admitted he signed the repair order.

[5] A document retrieved from the Louisiana Secretary of State's website was attached to the petition. The document listed Twin City Motors, Inc. as an active Business Corporation in the State of Louisiana. Nejad was listed as the agent, and Hingle was listed as the officer and comptroller.

bringing in the customers, talking to them, or anything else." The trial court denied the dilatory exception and allowed plaintiff the opportunity to "amend the petition to include as defendants, Twin City Motors AKA European Motors."

Hingle, a former attorney acting in proper person, filed an answer to the petition. He generally denied plaintiff's allegations and filed a reconventional demand, alleging plaintiff "willfully, wantonly harassed and abused process of law and with reckless disregard for the truth, libeled and slandered" him. Hingle sought damages for damages to his reputation, embarrassment, mental anguish, loss of sleep, physical and mental pain and suffering, and abuse of process of law. Plaintiff filed an answer to the reconventional demand. The trial court stated on the record it had dismissed plaintiff's claims against Hingle. However, Hingle's claims against plaintiff were not addressed at trial.

Subsequently, plaintiff filed a second amended petition, adding "Twin City Motor Corp., LCC [sic] AKA European Motors" as defendants. Plaintiff alleged she spoke to "a gentleman" from Twin City Motors/European Motors via telephone, and she was told the cost for repairing her vehicle would be approximately $5,000. When she told him she was not paying that amount, he informed her she owed "$285.00 for diagnostic[.]" Plaintiff asserted she was entitled to damages in the amount of $2,500, "plus court cost[s], wiper, damage to the side of my car." Plaintiff requested service on "Twin City Motors Crop [sic] LCC [and] European Motors" at 2111 Louisville Avenue, and she identified Nejad as the agent for service of process.

4

On December 5, 2022, plaintiff filed a third amending petition, identifying the defendants as "Greg Dice/Ali Moghimi and "Twin City Motors, LCC" [sic]. Plaintiff alleged "Greg Dice" was the service manager of "European Motor Twin City Motor LCC" [sic]. Plaintiff also alleged Dice "committed a crime of fraud by copying [her] son's name and pasting it on a receipt to get my money out of my bank account[.]" She also alleged she informed "Dice" her vehicle "had been hit," and he advised her to notify her insurance company. The petition does not contain any allegations against Moghimi.[6] Plaintiff sought damages "in the amount of $2,500.00 plus cost[s] of court." She also requested service on "European Motor, Twin City Motor LCC, Greg Dice, and Gilmer Hingle."

On January 12, 2023, plaintiff filed a fourth amended petition, in which she named Twin City Motors/European Motors, Greg Dyess,[7] and Ali Moghimi as defendants. Plaintiff reiterated her allegation Dyess committed fraud pertaining to her son's signature. Plaintiff also alleged Dyess misidentified himself as "Wayne Hogan," and when she retrieved her vehicle, it was "ramshack[ed]" and papers were scattered throughout the vehicle. For the first time, plaintiff claimed the right side of her vehicle "had a dent on the side with red paint" on it. She also alleged the windshield wiper "was switch[ed] and wasn't working," and the "heater was not getting hot." Plaintiff, again, prayed for damages in the amount of $2,500, plus court costs. She requested service on "European Motor, LLC, Twin City Motor LLC, Ali Moghimi, and Greg Dyess."

---

[6] During the trial, plaintiff testified Moghimi was the owner of the business.

[7] Greg Dyess was the service manager for Twin City Motors; it appears "Dice" was a misspelling of Dyess' name.

Dyess answered the petition, generally denying plaintiff's allegations. Dyess also asserted he was "not a corporate officer of any corporation, nor a shareholder in either Twin City Motors, Inc. or European Motors." However, neither Twin City Motors, European Motors, nor Moghimi answered the petition.[8]  Nonetheless, Moghimi filed a motion to transfer the matter from Monroe City Court, claiming he would file a counterclaim against plaintiff which would exceed the city court's jurisdictional limit. The court denied the motion to transfer, and there is no indication Moghimi filed a reconventional demand.

A trial was held on April 28, 2023, and plaintiff and Dyess appeared as pro se litigants.[9]  Plaintiff testified she spoke to Dyess, not Hogan, about her vehicle, and she insisted Dyess falsely identified himself as "Wayne Hogan."  She stated Dyess "sent in the false to get the money out of the bank," and he was the person who called her about her vehicle.  Plaintiff also stated Dyess told her his name was Wayne Hogan, and when she informed him about the dent in her car, he stated, "You gotta take that up with your insurance company."  She was not told she would be charged a diagnostic fee in the amount of $282.45, and she was unaware Car Shield would not be paying the fee.

---

[8] According to the trial court's judgment, service was attempted on Nejad, the registered agent for Twin City Motors.  However, Nejad is deceased, and the citation was returned with a notation from the deputy marshal, which stated, "Manager refused to take papers."  Subsequently, Dyess accepted service.

[9] Moghimi was served; however, he did not appear for trial.  On the record, plaintiff stated she served Twin City Motors, Moghimi, and European Motors "in order to get Mr. Dyess because wouldn't nobody accept the papers and wouldn't nobody accept responsibility but Mr. Dyess was the one that I dealt with, and he's the one who said he was Wayne Hogan."  Therefore, plaintiff asserted, "I had to file all of those papers to get to him."

6

Additionally, the evidence adduced at trial reveals Dyess was the manager at the time of the service, and he charged the diagnostic fee.

At the conclusion of the trial, the trial court rendered judgment in favor of plaintiff, stating in open court:

> [T] his judgment is in favor of Ms. Shirley Burks against ***Mr. Jahanger***, [sic] who is listed as the registered agent for service of process, ***Twin City Motors, LLC, aka European Motors, European Service***, ***Mr. Greg Dyess*** and ***Mr. Ali Moghami*** [sic]. Mr. Dyess in his capacity at that time as the service manager, now as the sales manager, Mr. Moghami in his capacity as the owner.

(Emphasis added). Subsequently, the trial court prepared a written judgment, which provides as follows:

> This Court, having taken argument from the parties and reviewed all evidence presented, finds that the Defendants, ***Ali Moghimi*** and ***Twin City Motors, L.L.C., AKA European Motors***, are fully indebted unto the Petitioner, Shirley Burks, in the full sum of [$1,627.45] with interest. General damages in the full amount of [$2,500.00] are hereby awarded.
>
> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Defendants, ***Ali Moghimi***, and ***Twin City Motors, L.L.C. AKA European Motors***, are liable unto Petitioner, Shirley Burks, for all damages sustained.
>
> Costs of Court are assessed against the Defendants.
>
> ***

(Emphasis added). The written judgment does not mention Dyess or "Jahanger."

Defendant, Ali Moghimi, appeals.

## DISCUSSION

*Diagnostic Fee*

Moghimi contends the trial court erred in granting a judgment in favor of plaintiff for reimbursement of the repair/diagnostic fee and attendant

7

charges, in the amount of $282.45. He argues plaintiff's son signed the repair order, and plaintiff paid the charges with her debit card, but then attempted to circumvent paying by having her bank company deny the charges. Once the bank was presented with documentation, including the repair order signed by plaintiff's son, the bank honored the charges. Moghimi asserts the trial court erred in awarding $282.45 to plaintiff because the charges were warranted.

In a civil action, the plaintiff seeking damages must prove each element of his or her claim by a preponderance of the evidence. *Terrell v. New Alliance Ins. Brokers, Inc.*, 54,262 (La. App. 2 Cir. 3/30/22), 336 So. 3d 1031; *Erwin v. State Farm Mut. Auto. Ins. Co.*, 34,127 (La. App. 2 Cir. 11/1/00), 771 So. 2d 229, *writ denied*, 00-3285 (La. 2/2/01), 784 So. 2d 6. Proof by preponderance of the evidence means that the evidence, when taken as a whole, shows that the fact to be proven is more probable than not. *Id.* If the party bearing the burden of proof fails to satisfy his burden by a preponderance of the evidence, his case fails to outweigh his opponent's case and he necessarily loses. *Id.*

In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110; *Terrell, supra.* Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Id.* In reversing a factfinder's determinations, the appellate court must satisfy a two-step process based on the record as a

8

whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993).

This test requires a reviewing court to do more than simply review the record for some evidence which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Hayes Fund for First United Methodist Church of Welsh, LLC*, *supra*; *Terrell*, *supra*. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart*, *supra*.

A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it. La. C.C. art. 2299. This article applies regardless of whether the person who pays money or delivers a thing not owed does so knowingly or by mistake. *Leisure Recreation & Ent., Inc. v. First Guar. Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Forvendel v. State Farm Mut. Auto. Ins. Co.*, 17-2074 (La. 6/27/18), 251 So. 3d 362. A person who in bad faith received a payment or a thing not owed to him is bound to restore it. La. C.C. art. 2303. A thing not due is that which is paid on the supposition of an obligation which did not exist. La. C.C. art. 2304.

In the instant case, in the original petition, plaintiff alleged she directed her son to take her vehicle to Twin City Motors for a myriad of issues. Plaintiff also alleged she believed the diagnostic fee, which she erroneously believed would amount to $25-50, would be covered under her Car Shield or Endurance warranty. Twin City Motors examined the vehicle

9

an apprised plaintiff of the cost of the recommended repairs. At trial,

plaintiff testified as follows:

> [W]hen I asked him for the diagnosis, I said where is the copy
> of it. I'm the diagnostic. Sir, I am not paying you no $282.00
> for a diagnostic that you sat there and wrote and what you
> wrote, you wrote what I told you I said was happening with the
> car. *** And when I called Car Shield, I asked Car Shield, I
> said, "Do you pay for dia[gnostics?]"; "No, ma'am. We don't
> pay anybody anything for diagnostics." And he was determined
> to get this money. So I, he wouldn't give me the key. So I had
> no other choice but to go ahead on and let him run the card
> because I knew I was going to stop payment [on] it because he
> couldn't give me a printout.

When asked by the trial court whether the amount of the diagnostic fee had

been discussed before she left the vehicle at Twin City Motors, plaintiff did

not provide a direct response; she merely stated she had been led to believe

Twin City Motors would accept the Car Shield warranty.[10]

James Burks, plaintiff's son, testified at trial. He initially denied

signing any documents, but later admitted the signature on the repair order

"kinda look[ed] like" his signature and identified the telephone number

written at the top of the repair order as belonging to him. On cross-

examination, Burks admitted he signed the repair order to "drop off" the

vehicle; however, his signature was not intended as a payment authorization.

Burks reiterated he signed the document to authorize Dyess "to do what

[plaintiff] gave him the order to do," and he did not authorize the payment or

sign a credit card receipt for payment.

Dyess testified he was the service manager at Twin City Motors when

plaintiff's son brought the vehicle to the shop. Although Dyess denied

---

[10] Plaintiff also testified she went to the Monroe Police Department to file
criminal charges against Dyess. According to plaintiff, the police officer refused
complete a police report regarding the matter.

knowing who owned Twin City Motors, he stated, "I work for Ali Moghimi." Dyess informed the court the document signed by Burks was the repair order, rather than a payment document. He explained, "The repair order is the document that we get signed with what the customer said was wrong with the car, giving us authorization to check and see what's causing those problems." He also stated he had customers sign the repair order "listing what they're saying is going on with their vehicle. He testified he never asserted Burks signed a payment authorization. Dyess testified plaintiff authorized the payment when she entered her debit card personal identification number into the credit card machine.

He testified he processed the debit card transaction when plaintiff came to retrieve her vehicle. He stated plaintiff was angry about having to pay the diagnostics fee, and she left without signing the invoice. Dyess testified plaintiff returned to obtain a copy of the diagnostic report, and he explained to her the computer system connected to the vehicles evaluated at Twin City Motors did not "have the capability to print diagnostics out." According to Dyess, the mechanic/technician who examined the vehicle generally handwrote the diagnostics on the printout after he inspected the vehicles.

Dyess testified plaintiff reported the vehicle was smoking before she brought the car to the repair shop, and he did not know why the smoking had worsened after she picked it up. He also testified before plaintiff dropped her car off, he told her Twin City Motors accepted Car Shield and

11

Endurance.  He also stated he did not know whether Car Shield maintained a list of preferred mechanics or whether Twin City Motors was on the list.[11]

Dyess also testified he responded to plaintiff's attempt to reverse the charges by submitting documentation to the bank.  He stated he provided a copy of the original receipt, a copy of the invoice marked "paid," and a copy of the repair order containing James Burks' signature authorizing the repair shop to inspect the vehicle.  In response to the documentation provided, the bank determined the transaction was valid and approved the payment.  Thereafter, the trial court asked Dyess whether he informed plaintiff about the diagnostics fees before she left her car at Twin City Motors.  Dyess testified he did not recall whether or not he informed plaintiff about the fee.  He stated it was his normal policy to tell customers "that there is an hour minimum diagnostics, and that's minimum, diagnostics to look at your car[.] *** If they ask for labor rate, I tell them what the labor rate is."  He further testified as follows:

> [U]sually, when I tell them that there is a[n] hour minimum labor charge, they ask what the amount is. What I was also saying is when a customer [has] Car Shield or Endurance or a third-party warranty, I make sure to tell the customers that, because nine times out of then, they ask. I make sure to tell the customer that if it is covered repair, the company will pay diagnostics. If it's not a covered repair, they will not pay diagnostics. And in this case, it was not covered.
> ***
> Now, when the customer tells me they have Car Shield or they have Endurance *** I try and make a point of it *** to let the customer know if it is a covered repair, they'll cover the diagnostics. But if it's not a covered repair, then it's all on you.
> ***

---

[11] During the trial, plaintiff insisted Dyess was not being truthful when he told her Twin City Motors accepted Car Shield.  According to her, a representative from Car Shield informed her Twin City Motors "was not on the list."

Dyess further explained when working with third-party companies, such as Car Shield and Endurance, after the diagnostics were completed, he would call the company and inform the company what repairs were needed. At that point, the company would tell him whether or not the repair would be covered. He stated he had no way of knowing, from the outset, whether a particular repair would be covered by the warranty. According to Dyess, the third-party companies generally would not disclose what repairs were covered until after the diagnostics were revealed. With regard to plaintiff, Dyess testified plaintiff had a "power train warranty," which "only covers certain things." He stated the issues with plaintiff's car were related to maintenance, and third-party warranty companies "don't cover maintenance items." Dyess stated, "If Car Shield and Endurance had covered [the suggested repairs], they would've covered [the] diagnostics. The only time that they don't is if it's not a covered repair."

Based on this record, we find plaintiff did not present any direct evidence she did not owe the diagnostic fee. She originally insisted Dyess "copied and pasted" her son's signature on the repair order; however, her allegation was disproven by the testimony of her son, who admitted he signed the document. Additionally, in her original petition, plaintiff alleged she provided her debit card to pay the diagnostic fee, believing the fee would not exceed $25-$50. However, she asserted she was improperly charged $282.45, which she did not believe she was required to pay "for something [Dyess] wrote on paper."

After careful review of this record, we find the record is devoid of any proof whatsoever relating to the payment of a thing not owed. Thus, we are compelled to find plaintiff did not carry her burden of proof, and the trial

13

court was manifestly erroneous in finding she was entitled to a refund of her payment in the amount of $282.45. The record demonstrates plaintiff knew a diagnostic fee would be charged; however, she erroneously believed either Car Shield or Endurance would be responsible for paying the fee. Based on this record, plaintiff's apparent misunderstanding of her warranty coverage cannot be attributable to defendants. Accordingly, we reverse this aspect of the trial court's judgment.

*Damage to Vehicle*

Moghimi also contends the trial court erred in granting a judgment in favor of plaintiff for damage to her vehicle. According to Moghimi, plaintiff did not present any evidence to establish her vehicle was damaged while on the premises of Twin City Motors. Additionally, plaintiff did not mention any damages to her vehicle when she retrieved it from the shop, and she did not complain about additional damage until she filed the lawsuit and had amended the petition several times. Moghimi further maintains the photographs submitted by plaintiff were not properly introduced into evidence (they were attached to one of the amendments to the petition), and there was no testimony regarding when the photographs were taken to ascertain when the damage to the vehicle occurred. Moghimi asserts he is "at a loss to understand what damage" the trial court determined amounted to $2,500 because the photographs depicted "minor paint abrasions" which could be "buffed out," and would not require the replacement or parts or painting.

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315(A). "Special damages," *i.e.*, "those which can be fixed to a pecuniary certitude," must be

14

proved to a specific dollar amount. *Stevens v. Winn-Dixie of La.*, 95-0435 (La. App. 1 Cir. 11/9/95), 664 So. 2d 1207, 1213.

> With regard to the damage to her vehicle, plaintiff testified as follows:
>
> I went on out to the car, my papers are all out of the glove compartment like somebody had vandalized [it], like it's been search[ed] all through. The windshield [wiper] was sitting up and, uh, my car had been hit on the side. It was a red mark on the side and a dent and another light was off. I told him, I said something had hit my car. He told me, "Oh, you got to file that with your insurance company." But my car was in his care.
>
>            \*\*\*
>
> This is where my windshield wiper had been switched and it wasn't working. I had to take it to Bosley, a BMW place \*\*\* and he charged me $75.00 to fix that.
>
>            \*\*\*

Plaintiff also testified she obtained an estimate for $1,200 from Junior's Body Shop to repair the front door on the passenger side and the bumper. Additionally, plaintiff stated she prayed for $2,500 "for the car, for all this paper filing and paper chasing, and for the cost of court," and the $2,500 included the $282.45.

Jacqueline Williams testified she rode with plaintiff to retrieve the vehicle from the repair shop. She stated she observed plaintiff and Dyess exit the building, and she saw plaintiff "showing him something on the car. I'm guessing it was the dent." However, Williams did not testify she actually saw any damage to plaintiff's vehicle when it was retrieved from Twin City Motors.

Dyess testified plaintiff did not mention anything about her vehicle being damaged until she returned to the business the following day. He denied knowing anything about the damage to plaintiff's vehicle while on the premises of Twin City Motors.

The trial court found plaintiff was entitled to damages in the amount of $1,627.45, without specifying the amount(s) attributable to which claim. In its oral reasons for judgment, the court discussed the diagnostic fee; however, the court did not reference the damage to the vehicle.

We have reviewed the testimony and the evidence presented by plaintiff. The testimony established plaintiff left her vehicle in the possession of Twin City Motors to be evaluated for an estimate for repairs. The photographs depicted a smear of red paint on a white car, and a dent and scratches near the bottom of the passenger-side door. The evidence did not establish when or where the damage occurred or when the photographs were taken. Additionally, the estimate introduced by plaintiff did not contain a date and is devoid of any indication of when the estimate was provided.

After reviewing this record in its entirety, we find this record is devoid of evidence sufficient to meet plaintiff's claim for special damages. Thus, we find the trial court's determination, with regard to the damage to plaintiff's vehicle, was manifestly erroneous, and the trial court abused its discretion in awarding special damages.

*General Damages*

In the assessment of damages for offenses, quasi offense, and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. General damages include mental or physical pain and suffering, inconvenience, and loss of intellectual or physical enjoyment that cannot be definitively measured in monetary terms. *Montgomery v. Kedgy*, 44,601 (La. App. 2 Cir. 8/26/09), 21 So. 3d 980, *writ denied*, 09-2110 (La. 11/25/09), 22 So. 3d 167. There is no mechanical rule for determining general damages; rather the facts and circumstances of each case control. However, factors to

be considered in assessing quantum for pain and suffering include severity and duration. *Kose v. Cablevision of Shreveport*, 32,855 (La. App. 2 Cir. 4/5/00), 755 So. 2d 1039, *writ denied*, 00-1177 (La. 6/16/00), 764 So. 2d 964, and *writ denied*, 00-1289 (La. 6/16/00), 765 So. 2d 340.

Before the trial court's general damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. *Id.* The role of the appellate court in reviewing general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion by the trier of fact. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 483.

The record reveals the trial court allowed the parties 10 days to file letters regarding "quantum, which means the damages that you allege to be due and owing." In response, plaintiff presented a "Letter of Reimbursement," in which she asserted she was entitled damages as follows:

| | |
|---|---|
| 282.00 | Plus Interest |
| 1,200.00 | For damages on the right side of car |
| 70.00 | For the right wiper that was switched |
| 75.00 | For pay Bosley Motor to repair |
| 1,000.00 | Los[s] of sleep |
| 1,000.00 | Physical and mental pain, suffering past, present and future |
| | Abuse of process of law |
| | Cost of court |

\*\*\*

As stated above, the trial court concluded plaintiff was entitled to general damages in the amount of $2,500, as requested in her petitions for damages. During the trial, plaintiff testified regarding the inconvenience of

17

not having a vehicle during the time it was in the shop, and she has been unable to drive the vehicle since that time due to its state of disrepair. Plaintiff also expressed her belief that the employees at Twin City Motors "took parts off of [her] car" and "exchanged parts off of the car."

Plaintiff did not present any evidence to support her assertions, and there is no evidence of record to show the condition of plaintiff's vehicle is attributable to defendants. Plaintiff took her vehicle to be evaluated, and Twin City Motors evaluated the vehicle and told her what repairs would be necessary. Plaintiff declined to have the vehicle repaired. Therefore, the record lacks evidence to support a conclusion that plaintiff's inconvenience and the current disrepair of the vehicle is attributable to defendants. In sum, there is no evidence in the record to support an award of $2,500 in general damages. Accordingly, we find the trial court abused its discretion in awarding general damages.

*Moghimi's Claims - Abuse of Process*

Moghimi contends the trial court erred in denying his claim for abuse of process. He argues plaintiff testified she "was suing everybody she could until she got the right one," and it is obvious from her numerous filings she "did not care that persons sued must defend themselves rather than be cast in judgment." Moghimi also argues plaintiff "knowingly and maliciously" named European Motors, a non-existent entity, as a defendant, despite knowing Twin City Motors, Inc., was the name of the repair shop. He asserts plaintiff abused the process by suing various employees of Twin City Motors, knowing individual employees are not liable for the alleged actions of their employer.

18

First, we note Moghimi did not file an answer to the lawsuit to assert any claim for abuse of process, nor did he appear at trial. Further, Dyess, the only person who appeared at trial on behalf of the named defendants, did not raise any arguments with regard to abuse of process.

Appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. *Thomas v. Bridges*, 13-1855 (La. 5/7/14), 144 So. 3d 1001; *Maxie v. Bates*, 54,256 (La. App. 2 Cir. 4/13/22), 338 So. 3d 564; *Hatfield v. Herring*, 54,048 (La. App. 2 Cir. 8/11/21), 326 So. 3d 944, *writ denied*, 21-01377 (La. 12/7/21), 328 So. 3d 424; *Jacobs v. GEICO Indemnity Co.*, 52,372 (La. App. 2 Cir. 9/26/18), 256 So. 3d 449. As this issue is not properly before us, we decline to address this argument.[12]

---

[12] Although we are reversing the trial court's judgment, we are compelled to note the trial court rendered two judgments: an oral judgment and a written judgment. When ruling in open court, the trial court rendered judgment against "Mr. Jahanger [sic], who is listed as the registered agent for service of process, Twin City Motors, LLC, aka European Motors, European Service, Mr. Greg Dyess and Mr. Ali Moghami [sic]." Subsequently, the trial court prepared a written judgment, in which the following defendants were cast in judgment: "Ali Moghimi and Twin City Motors, L.L.C., AKA European Motors." The written judgment does not mention Dyess or Jahangir.

A trial judge may, within his or her authority, render a judgment which differs substantially from his or her prior oral statement. *See*, *Rodgers v. Rodgers*, 26,093 (La. App. 2 Cir. 9/21/94), 643 So. 2d 764. When discrepancies exist between an oral ruling of the trial court and the court's written judgment, the written judgment will prevail. *See*, *Hebert v. Hebert*, 351 So. 2d 1199 (La. 1977); *Rodgers*, *supra*.

Although this record contains multiple statements, primarily by the trial court, regarding Moghimi's alleged ownership of Twin City Motors and/or European Motors, we note there is no evidence or allegation regarding any wrongdoing on the part of Moghimi in his individual capacity. Plaintiff neither alleged nor testified regarding any duty owed, or breach of that duty, by Moghimi in this matter.

Furthermore, in the trial court's judgment, Twin City Motors was incorrectly identified as "Twin City Motors, L.L.C. AKA European Motors." However, the documentary evidence presented reveals the correct name of the business should be Twin City Motors, Inc. However, we are reversing the trial court's judgment, we see no need to amend the judgment to name the proper defendant.

**CONCLUSION**

For the reasons set forth herein, we amend the judgment, in part, to reflect in correct name of defendant, Twin City Motors, Inc. AKA European Motors. We reverse the portion of the judgment awarding special damages in the amount of $1,627.45, and general damages in the amount of $2,500. We also reverse the portion of the judgment finding defendant, Ali Moghimi, liable to plaintiff. Costs of the appeal are assessed to plaintiff, Shirley Burks.

**REVERSED.**