Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,984-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RODESSA WAKEFIELD                                    Plaintiff-Appellee

versus

RYAN CHEVROLET                                       Defendant-Appellant

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2023CV00455

Honorable Tammy Deon Lee, Judge

* * * * *

CHARLES W. HEROLD, III                               Counsel for Appellant

RODESSA WAKEFIELD                                    In Proper Person,
                                                     Appellee

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**STEPHENS, J.,**

This appeal arises from the Monroe City Court, Parish of Ouachita, the Honorable Tammy D. Lee, Judge, presiding. The defendant, Ryan Chevrolet, appeals from the city court's judgment awarding the plaintiff, Rodessa Wakefield ("Ms. Wakefield"), $3,227.00 in special damages and $1,298.00 in general damages. For the reasons expressed below, we reverse the trial court's award of general damages and amend the trial court's special damage award by reducing it to $298.00.

## FACTS AND PROCEDURAL HISTORY

On November 7, 2022, Ms. Wakefield was in an automobile accident in West Monroe, Louisiana, while driving her 2019 Chevrolet Impala, which she had purchased just a week before from an Enterprise Car Rental in Shreveport, Louisiana. Following the accident, Ms. Wakefield and her automobile insurer communicated about the accident and worked on getting the surveillance footage from the parking lot in which the accident occurred. Once the recording was obtained, Ms. Wakefield took her vehicle to Ryan Chevrolet in Monroe on February 13, 2023, to get a repair estimate.

Ms. Wakefield discussed the repair work with Mr. Todd, Ryan Chevrolet's body shop manager. Mr. Todd prepared an estimate for the insurance company which indicated that repairs to the vehicle would cost $3,227.42. According to Ms. Wakefield, the vehicle stayed in the repair shop for a little over a week, and her insurance company covered the full cost of these repairs. On March 8, 2023, Ms. Wakefield filed a petition against Ryan Chevrolet, alleging that the body shop did not completely repair her vehicle. She requested "$5,000 because full return of the Geico

check signed for $3,227.42, another rental from Enterprise, another deposit for rental," lost wages, and court costs.

At the trial on July 6, 2023, Ms. Wakefield testified that during the accident, her vehicle suffered damage to the front driver's side of the vehicle, and the maintenance to the vehicle included repairing the bumper and the grille and an alignment. She indicated that once she received her car from the body shop, she discussed with a family member the repairs that had been done to her vehicle, and the family member told her that the vehicle looked like it had not received any repairs.

Following this exchange, Ms. Wakefield testified that she contacted Mr. Todd at Ryan Chevrolet and explained the issues she had with the repair work. She stated that the bumper was hanging off, the grille was "sticking off," and she could place her finger in a gap under the hood of the vehicle. Ms. Wakefield testified she then contacted Casey Key, Ryan Chevrolet's service manager. Mr. Key requested that Ms. Wakefield bring the vehicle back so they could assess the repair work. According to Ms. Wakefield, she, Mr. Key, Mr. Todd, and an insurance representative met and inspected the vehicle. Although Mr. Key offered to repair the vehicle at no extra cost, Ms. Wakefield continued to express her concerns about the repair work and questioned whether she could use another body shop to complete the repair work. The insurance representative told Ms. Wakefield she could use another body shop, but the insurer would not make another payment—she would have to get back the money GEICO paid to Ryan Chevrolet.

Ms. Wakefield stated that, following the exchange with Mr. Key and the insurance representative, she got an estimate from Mitchell's Body Shop. The estimate showed the cost to repair her vehicle would be $615.15. Ms.

2

Wakefield stated she did not know the extent of the work needed to be completed in order to repair her car, and she did not know how long it would take to repair the vehicle. Furthermore, the length of time she would need a rental vehicle was also unknown.

Mr. Key, who testified next, stated that he is the Fixed Operations Director at Ryan Chevrolet, and he oversees the parts, service, body shop, and detail departments. He testified about the meeting between himself, Ms. Wakefield, and the GEICO representative. He also reviewed the photos of the vehicle and indicated that an adjustment could be made to the gap between the top of the headlight and the hood/piece of trim on the vehicle. For each problem he was questioned about, Mr. Key suggested that the repair shop would have attempted to make adjustments and address Ms. Wakefield's concerns about the alleged faulty repair work. However, Ms. Wakefield declined any additional services offered by Mr. Key.

Regarding the Mitchell's Body Shop estimate, Mr. Key explained that several items listed on the estimate had been completed by Ryan Chevrolet's body shop. One item specifically, the upper grille, could be deducted from the second estimate, according to Mr. Key. Because of this, Mr. Key stated that the total cost of repair should be about $298.00. At the close of his testimony, Mr. Key indicated that had Ms. Wakefield allowed Ryan Chevrolet to repair the vehicle, the repairs would have taken less than a day and would have been free of charge. Mr. Key reiterated that Ryan Chevrolet was still willing to make those adjustments for Ms. Wakefield.

At the close of the trial, the court found Ms. Wakefield to be a credible witness and indicated that Mr. Key's testimony regarding the meeting at which he addressed Ms. Wakefield's concerns about the vehicle

3

was "incredulous at best." The court also disagreed with Mr. Key that it would only require $298.00 to complete a second round of repairs to the vehicle. The court awarded Ms. Wakefield $4,525.00 in damages, with $1,298.00 of those damages classified as general damages. Ryan Chevrolet objected to the award of damages and indicated that general damages were not requested by Ms. Wakefield in her petition. Ryan Chevrolet now appeals.

## DISCUSSION

In its sole assignment of error, Ryan Chevrolet contends that the trial court erred in awarding $4,525.00 in damages to Ms. Wakefield. More specifically, Ryan Chevrolet maintains that Ms. Wakefield made no demand for general damages in her lawsuit or at trial, and the evidence does not support awarding Ms. Wakefield general damages. Similarly, any amount awarded above $298.00 in special damages by the trial court to Ms. Wakefield is manifestly erroneous or clearly wrong.

The trial court's findings of fact are subject to the manifest error standard of review, and the court of appeal may not set these aside unless they are manifestly erroneous or plainly wrong. *Broussard v. State, ex. rel Office of State Buildings* 12-1238 (La. 4/05/13), 113 So. 3d 175, *Hodge v. Louisiana Farm Bureau Mut. Ins. Co.*, 55,656 (La. App. 2 Cir. 6/26/24), 388 So. 3d 1281. The appellate court must decide only whether the factfinder's conclusion was reasonable, not whether it was right or wrong. *Id.*; *Smith v. City of Monroe*, 52,605 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1218. Reversal is warranted only when the record, viewed in its entirety, (1) contains no reasonable factual basis for the district court's finding and (2) establishes that the finding is clearly wrong. *Id.* Without such a showing,

4

the appellate court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 483.

Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315(A). In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1.

Special damages are those which can be fixed to a pecuniary certitude. *Burks v. Hogan*, 55,699 (La. App. 2 Cir. 5/22/24), 387 So. 3d 841, *writ denied*, 24-00814 (La. 10/15/24), 394 So. 3d 814; *Stevens v. Winn-Dixie of Louisiana*, 95-0435 (La. App. 1 Cir. 11/09/95), 664 So. 2d 1207; *Hernandez v. Continental Cas. Ins. Co.*, 615 So. 2d 484 (La. App. 4 Cir. 1993), *writ denied*, 620 So. 2d 850 (La. 1993). When items of special damage are claimed, they must be specifically alleged. La. C.C.P. art. 861. Generally, a trial court may not award special damages which have not been specifically pled. The purpose of the specificity requirement is to avoid the imposition of surprise upon the defendant. *Stevens*, *supra*.

General damages include mental or physical pain and suffering, inconvenience, and loss of intellectual or physical enjoyment that cannot be definitively measured in monetary terms. *Burks, supra*; *Montgomery v. Kedgy*, 44,601 (La. App. 2 Cir. 8/26/09), 21 So. 3d 980, *writ denied*, 09-2110 (La. 11/25/09), 22 So. 3d 167. No mechanical rule exists for determining general damages; rather, the facts and circumstances of each case control. *Burks, supra*; *Kose v. Cablevision of Shreveport*, 32,855 (La. App. 2 Cir. 4/5/00), 755 So. 2d 1039, *writs denied*, 00-1177, 00-1289 (La.

5

6/16/00), 764 So. 2d 964, 765 So. 2d 340. Before the trial court's general damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. *Id.* The role of the appellate court in reviewing general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion by the trier of fact. *Burks*, *supra*; *Criswell, supra*.

In its reasons for judgment, the trial court indicated that it awarded Ms. Wakefield $4,525.00 in damages. Although the trial court noted it did not include loss of wages, the trial court specified that it awarded the full amount paid for the repairs to Ryan Chevrolet as well as the cost for a rental vehicle. Similarly, the trial court indicated that it awarded general damages to Ms. Wakefield for her "mental anguish and the condition under which [she] had to endure while she did not have her vehicle." Although the trial court is in the best position to evaluate evidence and make credibility determinations, the record before us is devoid of any evidence to support the amount of damages awarded to Ms. Wakefield in this case.

Even though the testimony presented at trial shows that Ryan Chevrolet acknowledged some level of faulty repair work, this admission, standing alone, cannot support $4,525.00 in damages, especially considering that Ms. Wakefield incurred no out-of-pocket expenses for the repair work. Her insurance company provided the $3,227.42 payment to Ryan Chevrolet directly, not to Ms. Wakefield. Most notably, there is testimony in the record that Ryan Chevrolet offered to correct the faulty repair work at no cost to Ms. Wakefield. However, she refused. Clearly, Ryan Chevrolet was willing to remedy the issues Ms. Wakefield had with the repair work, and her refusal of this offer is counterintuitive to her completely understandable

6

desire that her vehicle's incomplete repairs be remedied. However, Ryan Chevrolet is not to blame for Ms. Wakefield's decision to forgo its offer and instead go to another body shop.

Similarly, nothing in the record supports or establishes that Ms. Wakefield incurred any expenses related to renting a vehicle. The only actual special damages supported by the record is the $298.00 set forth by Mr. Key in his testimony. Specifically, his explanation that the upper grille part shown on the Mitchell's Body estimate could be deducted from the total amount of the estimate because Ryan Chevrolet's repair work on Ms. Wakefield's vehicle included replacement of the grille. Subtraction of the cost of an upper grille from the Mitchell's Body estimate results in $298.00.

As it relates to general damages specifically, Ms. Wakefield presented no evidence to support that she suffered mental anguish or endured hardship while she was without her vehicle. Ms. Wakefield alleged in her petition that she sought recovery for lost wages, but she presented no evidence related to thereto. When asked about her request for lost wages, Ms. Wakefield stated, "I'll leave that alone." There is no factual or evidentiary basis in the record to support the trial court's finding that Ms. Wakefield is entitled to $1,298.00 in general damages. As such, the trial court abused its discretion in awarding this amount.

Notwithstanding the broad discretion trial courts have in awarding damages as well as assessing evidence and weighing credibility of witnesses, this record, viewed in its entirety, contains no reasonable factual basis for the trial court's finding that Ms. Wakefield suffered mental anguish and hardship or that she otherwise incurred $3,227.00 in special damages from Ryan Chevrolet's faulty repair work. The record before us unequivocally

7

establishes that the trial court's findings are clearly wrong and therefore must be set aside.

## CONCLUSION

For the reasons set forth above, that part of the trial court's judgment awarding general damages is reversed. That portion of the trial court's judgment awarding special damages is amended as follows. The trial court's award is vacated and the defendant, Ryan Chevrolet, is hereby ordered to pay the plaintiff, Rodessa Wakefield, $298.00 in special damages, with legal interest thereon from the date of judicial demand until paid. Costs of this appeal are assessed equally between the parties.

**REVERSED IN PART; AMENDED IN PART AND AS AMENDED, AFFIRMED.**